# United States Court of Appeals for the Federal Circuit

---

**CARL D. HAYDEN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

---

2015-3073

---

Petition for review of the Merit Systems Protection Board in No. CH-4324-13-0534-I-1.

---

Decided: February 12, 2016

---

STEPHEN J. SMITH, Cadwalader, Wickersham & Taft LLP, Washington, DC, argued for petitioner. Also represented by KRISTIN LEIGH YOHANNAN MOORE.

RENÉE GERBER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before LOURIE, O'MALLEY, and STOLL, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Carl D. Hayden ("Hayden") seeks review of the Merit Systems Protection Board ("the Board") decision denying his request for corrective action under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et. seq.* Specifically, Hayden alleged that the Department of the Air Force ("Air Force") violated USERRA when it: (1) denied him a promotion due to his military service; (2) denied him the benefit of reemployment in the position he would have obtained had the agency processed his position upgrade; and (3) retaliated against him after he sought USERRA protections. The Board rejected all three of Hayden's claims. *Hayden v. Dep't of the Air Force*, No. CH-4324-13-0534-I-1, 2014 WL 6879135 (M.S.P.B. Dec. 4, 2014) ("*Final Decision*"). We agree with the Board that Hayden failed to meet his burden of proof with respect to his reemployment and retaliation claims. With respect to his claim of discrimination based on military service, however, we vacate the Board's decision and remand for further factfinding.

BACKGROUND

A. Factual Background

Hayden is a member of the Air Force Reserve and has worked as a protocol specialist at the Wright-Patterson Air Force Base since March 2002. The Wright-Patterson Air Force Base is geographically divided into Area A and Area B—each of which has its own protocol office. When Hayden began working at the Base, he worked in B Flight, which is responsible for all protocol support arising on Area B of the Base. At that time, his position was classified as GS-9. *Final Decision*, 2014 WL 6879135, at ¶ 2.

In 2010, Hayden transferred to the protocol office in A Flight, which is responsible for protocol support for Area

A as well as the Air Force Security Assistance Center ("AFSAC"). *Id.* Because he acquired new duties during the transfer, the agency upgraded Hayden's position from GS-9 to GS-11. *Id.*

The B Flight Protocol Office lost two GS-12 positions in November 2011. *Id.* at ¶ 3. The employees in those positions were declared as "surplus," meaning that they "were not working in permanently authorized positions." *Id.* While one of those employees was subsequently placed in another position, the other became a "mandatory placement priority and was still in that status when the appellant filed the petition for review." *Id.*

On March 26, 2012, Hayden's supervisor submitted a request to upgrade his position to GS-12, "based on accretion of duties at the higher grade level." *Id.* at ¶ 4. To justify the upgrade, his supervisor wrote:

> Over abundance [sic] of events to work and not enough GS-12's to perform the duties. Often assign Carl events that are above GS-11 duties due to both requirements and to develop his growth. He is working above his pay grade and has shown he is capable of performing at a GS-12 grade level.

*Id.*

At the end of March 2012, Hayden received military orders to begin active service on April 10, 2012. His duty was subsequently extended in July 2012. In May 2012, a human resources position classifier notified Hayden's supervisor that she needed to conduct a desk audit before upgrading his position. The position classifier explained that she needed to interview Hayden in person for the audit, and was unable to do so while he was on extended active duty. *Id.* at ¶ 5. Hayden's supervisor notified him that the upgrade had been cancelled because he was in nonpay status, but "[o]nce [you] return in January we will re-engage!" *Id.* In July 2012, however, protocol support

duties for the AFSAC were transferred from the A Flight protocol unit to another unit, thus reducing the need for GS-12 level employees in the unit. *Id*.

Hayden returned from active duty in December 2012, and returned to his GS-11 position. Although he received his within-grade increase, his supervisor did not resubmit the request to upgrade his position. *Id*. at ¶ 6. According to Hayden, his supervisor "was unable to explain why the upgrade was not being processed." *Id*. Hayden performed additional reserve duty from March 4-8, 2013. He subsequently met with his supervisor on March 13, 2013, and asked her to resubmit the upgrade request. According to Hayden, "she informed him that she did not recommend his promotion because he had been absent too often for his Reserve duties." *Id*. Hayden "immediately sought assistance from the base Employer Support of the Guard Reserve (ESGR) office." *Id*.

The next day, Hayden met with his supervisors to discuss his performance. "During the meeting, the Chief of Protocol raised concerns about [Hayden's] performance that, he alleged, had never been raised before, though he admitted at the hearing that the concerns did not lack foundation." *Id*. at ¶ 7. On May 20, 2013, Hayden received a performance feedback memorandum which stated that he was no longer working at the GS-12 level. *Id*. at ¶ 8. The agency did not request an upgrade to Hayden's position.

## B. Procedural History

On May 28, 2013, Hayden filed a request for corrective action with the Board, alleging USERRA violations. Hayden argued that: (1) he was denied a promotion due to his military service; (2) he was denied a benefit of reemployment in the position he would have obtained had the agency processed his upgrade; and (3) the agency retaliated against him after he sought USERRA protections.

In response, the agency argued that, due to organizational restructuring in July 2012, while Hayden was on reserve duty, there was a reduced need for GS-12 protocol officers in the A Flight Protocol Office. The agency also explained that: (1) it could not have placed Hayden in a GS-12 position without allowing other officers at his same level to compete; and (2) it was obligated to place the remaining surplus GS-12 employee. *Final Decision*, 2014 WL 6879135, at ¶ 9.

After a videoconference hearing, the administrative judge ("AJ") denied Hayden's request for corrective action, "finding that he had not shown by preponderant evidence that his military service was a substantial or motivating factor in the agency's failure to promote him." *Id.* at ¶ 10. Indeed, the AJ found that Hayden "produced no evidence whatsoever that his military service was considered adversely when the agency failed to promote him." *Hayden v. Dep't of the Air Force*, No. CH-4324-13-0534-I-1, 2013 MSPB LEXIS 5635, at *4 (M.S.P.B. Nov. 5, 2013) ("*Initial Decision*"). During the hearing, there was testimony that the Chief of Protocol requested a desk audit and that the audit could not be completed because Hayden was not at work for the interview. *Id.* at *5. The AJ found that, even if a desk audit had been performed, Hayden would still have been required to compete for the GS-12 position. *Id.* Finally, the AJ found that Hayden failed to meet his burden of proof with respect to retaliation. *Id.* at *6.

Hayden filed a petition for review to the full Board. The Board vacated the Initial Decision, but denied Hayden's request for corrective action. *Final Decision*, 2014 WL 6879135, at ¶ 1. As to Hayden's first claim—that he was denied a benefit due to his military service—the Board found that, contrary to the AJ's decision, there was evidence from which one could conclude that Hayden's military service was a motivating factor in the agency's decision not to upgrade his position. *Id.* at ¶ 14. The

Board found "a temporal link between the appellant's extended period of Reserve duty and the agency's decision not to upgrade his position." *Id*. at ¶ 16. In particular, the Board pointed to testimony from Hayden's supervisor that none of her prior position upgrade requests had required in-person desk audits, and that she had participated in a telephone audit for Hayden's earlier position upgrade to GS-11. *Id*. The position classifier who examined the upgrade request testified that she was aware of only about ten requests that had not been granted out of the hundreds she had processed. *Id*. And Hayden testified that, during his March 13, 2013 conversation with his supervisor, she informed him that his position had not been upgraded because "he spent too much time out of the office for Reserve duties." *Id*. at ¶ 17. The Board concluded that the evidence showed that the agency considered Hayden's absence in making its decision not to upgrade his position.

Although the Board found that the AJ had erred, it nonetheless concluded that Hayden's USERRA claims failed. Though there was sufficient evidence to shift the burden of proof for Hayden's first claim to the agency, the Board found that the agency met its burden to establish that it did not deny the upgrade request because Hayden was on military duty. *Id*. at ¶ 25. The Board found that the agency delayed processing the upgrade request because Hayden was unavailable for an in-person desk audit, which the position classifier testified was typically conducted when the upgraded position was at or above the GS-12 level. *Id*. at ¶¶ 21, 25. And, when Hayden returned, the workload in the office had changed such that additional GS-12 protocol officers were not needed. *Id*. at ¶ 25. The Board concluded that the agency showed that it "decided not to pursue the upgrade both during and after the appellant's absence based on valid reasons other than the appellant's service in the Air Force Reserve." *Id*.

As for Hayden's second claim—that he was denied reemployment rights when he returned from military duty—the Board found that Hayden was not entitled to return to a GS-12 position. The Board explained that the "A Flight Protocol Office lost its additional high-level duties about 4 months after the upgrade request was submitted and after the B Flight Protocol Office had declared two GS-12 Protocol Officers in surplus status a few months earlier." *Id.* at ¶ 29. The record showed, therefore, that the protocol office no longer needed another GS-12 protocol officer. *Id.* In any event, the Board found that Hayden would have had to compete for the upgraded position because there was another GS-11 protocol officer in A Flight. *Id.* Accordingly, the Board found no guarantee that Hayden would have received the upgraded position but for his military service. *Id.* at ¶ 31.

Finally, the Board rejected Hayden's third claim— that the agency retaliated against him for seeking assistance from the ESGR to enforce his USERRA rights. The Board found that Hayden "adduced no evidence . . . that the agency bore any discriminatory animus towards him and he thus failed to meet his initial burden of proof." *Id.* at ¶ 33. To the contrary, the Board found that the agency established that Hayden's supervisors "were concerned about helping him overcome a decline in his performance and prepare for eventual promotion to GS-12." *Id.*

Hayden timely appealed the Board's decision to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1). By letter dated October 14, 2015, counsel for Hayden informed the court that Hayden was promoted to a GS-12 Protocol Specialist position effective September 20, 2015. That promotion moots some of the relief requested in this appeal. Hayden continues to seek an award of "back pay, interest, and other benefits to which he is entitled, including attorneys' fees and litigation expenses," however. Pet'r Br. 17 (citing 38 U.S.C. § 4324; 20 C.F.R. § 1002.312).

DISCUSSION

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Hayden maintains that the agency committed three separate USERRA violations and that the Board erred in its analysis of each. First, he argues that the Board failed to apply the requisite burden shifting framework to his discrimination claim. According to Hayden, the Board's rejection of his discrimination claim "is premised on hindsight that allows the Air Force to justify its discrimination based on the later results of that discrimination." Pet'r Br. 16. Next, Hayden argues that the Board erred in finding that he failed to meet his burden to demonstrate that he was entitled to reemployment at the GS-12 level when he returned from military service. Finally, Hayden argues that the Board's analysis of his retaliation claim is unsupported by substantial evidence and ignores its own recognition of discriminatory animus in its analysis of the discrimination claim. We address each of these issues in turn.

A. Discrimination Claim

USERRA prohibits employers from discriminating against their employees because of their military service, and affords certain protections to military service members with respect to their civilian employment. 38 U.S.C. § 4311(a). It provides, in relevant part, that:

A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial

employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

*Id.*

We analyze USERRA discrimination claims under a burden-shifting framework. *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001). Applying this framework, an employee who makes a discrimination claim under USERRA bears the initial burden of showing, by a preponderance of the evidence, that his military service was a substantial or motivating factor in the adverse employment action. *Id.* As we have explained, "military service is a motivating factor for an adverse employment action if the employer 'relied on, took into account, considered, or conditioned its decision' on the employee's military-related absence or obligation." *Erickson v. U.S. Postal Serv.*, 571 F.3d 1364, 1368 (Fed. Cir. 2009) (quoting *Petty v. Metro. Gov't of Nashville–Davidson Cty.*, 538 F.3d 431, 446 (6th Cir. 2008)).

Discriminatory motivation or intent "may be proven by either direct or circumstantial evidence." *Sheehan,* 240 F.3d at 1014. In *Sheehan*, we explained that:

Discriminatory motivation under the USERRA may be reasonably inferred from a variety of factors, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees com-

pared to other employees with similar work records or offenses.

*Id.* "In determining whether the employee has proven that his protected status was part of the motivation for the agency's conduct, all record evidence may be considered, including the agency's explanation for the actions taken." *Id.*

Where an employee makes the prima facie showing of discriminatory motivation or intent, "the employer can avoid liability by demonstrating, as an affirmative defense, that it would have taken the same action without regard to the employee's military service." *Erickson*, 571 F.3d at 1368; *see* 38 U.S.C. § 4311(c)(1). "An employer therefore violates section 4311 if it would not have taken the adverse employment action but for the employee's military service or obligation." *Erickson*, 571 F.3d at 1368.

Here, the Board found that "the agency considered [Hayden's] absences for Reserve duty when it decided not to process the upgrade request during his absence and not to pursue the upgrade upon his return." *Final Decision*, 2014 WL 6879135, at ¶ 19. Weighing all of the evidence, the Board concluded "that the agency considered the appellant's military absences to be problematic, and the absences were a motivating factor in the agency's failure to provide the position upgrade." *Id.* Accordingly, the Board found that Hayden satisfied his initial burden.

The Board then purported to shift the burden to the agency to demonstrate, by preponderant evidence, "that it would have taken the same action without considering his military service." *Id.* at ¶ 20 (citing *Erickson*, 571 F.3d at 1368). The agency explained that it did not upgrade Hayden's position because: (1) the position classifier had the practice of conducting in-person desk audits for any position at the GS-12 level or above; and (2) by the time Hayden returned, the A Flight Protocol Office had a

reduced workload. *Id.* at ¶¶ 20-21. The agency further argued that Hayden would have had to compete for the upgraded position, and that "the GS-12 employees from B Flight who had been declared as surplus would have had internal priority over the applicant." *Id.* at ¶ 20.

The Board found that, taken as a whole, "the evidence does not show that the agency denied the upgrade request because the appellant was on military duty. Instead, it shows that processing of the request was delayed because the appellant was temporarily unavailable for part of the consideration process and was on leave without pay." *Id.* at ¶ 25. The Board concluded that the "agency has thus shown that it decided not to pursue the upgrade both during and after the appellant's absence based on valid reasons other than the appellant's service in the Air Force Reserve. Accordingly, the agency met its burden of proof under section 4311(a)." *Id.*

On appeal, Hayden contends that the Board failed to properly shift the burden to the agency to justify its actions in not promoting him and that, if it had, the agency could not have met its burden. In particular, Hayden argues that: (1) the Board erred in finding that a desk audit was required to process his position upgrade; (2) the Board erred in determining that he would have had to compete for the promotion; and (3) the Board's finding that the Protocol Office no longer needed GS-12 employees "is irrelevant because at the time Mr. Hayden's upgrade request was placed . . . there were not enough GS-12s to perform the duties of the office and thus [his] position needed to be upgraded." Pet'r Br. 21. As explained below, we agree with Hayden that the Board did not hold the agency to its burden.

First, as the Board noted, the Office of Personnel Management ("OPM") Classifier's Handbook explains that a desk audit "is no more than a conversation []or interview with the person in the job, *or with the supervisor of*

*the position*, or with both . . . to gain as much information as possible about the position." *Final Decision*, 2014 WL 6879135, at ¶ 21. The position classifier testified that "she normally conducted an in-person desk audit when the upgraded position would have been at or above the GS-12 level." *Id.* It is undisputed, however, that the decision to conduct a desk audit is discretionary. *Id.* Indeed, Hayden's supervisor testified that "none of her prior position upgrade requests had required in-person desk audits" and that "she had participated in a telephonic audit for [Hayden's] position upgrade to GS-11." *Id.* at ¶ 16.

Although the Board recognized that a desk audit was not necessary for Hayden's position upgrade, it nonetheless credited the agency's argument "that it was unable to complete the desk audit and process the upgrade because [Hayden] was unavailable." *Id.* at ¶ 20. The Board then concluded that the agency had shown that it denied the upgrade request in part because Hayden was "temporarily unavailable for part of the consideration process." *Id.* at ¶ 25. We agree with Hayden that his "inability to complete an optional procedure cannot form a legally cognizable basis to discriminate against him because of his military service." Pet'r Br. 23.

This court has made clear that an "employer cannot escape liability under USERRA by claiming that it was merely discriminating against an employee on the basis of his absence when that absence was for military service." *Erickson*, 571 F.3d at 1368. And we have recognized that "the overarching goal of [USERRA] is to prevent those who serve in the uniformed services from being disadvantaged by virtue of performing their military obligations." *Id.* As we explained in *Erickson*, the "most significant—and predictable—consequence of reserve service with respect to the employer is that the employee is absent to perform that service." *Id.* Although an agency is "entitled to remove an employee for prolonged non-military leaves

of absence . . . 'an employer can not treat employees on military duty like those on non-military leave of absence.'" *Id.* at 1369 (quoting *Allen v. U.S. Postal Serv.*, 142 F.3d 1444, 1447 (Fed. Cir. 1998)). *Erickson* thus stands for the proposition that an employee's military absence cannot be held against him, and that employers cannot treat employees on military leave like those on non-military leave of absences.

Hayden was not available for an in-person desk audit precisely because he was performing his military obligations. That the agency may otherwise be entitled to cancel a position upgrade request when an employee on non-military leave fails to attend a requested interview is of no moment. *See Erickson*, 571 F.3d at 1369. The fact remains that Hayden was absent from work because of his military service, and USERRA protects against adverse employment actions resulting from such absences.

The mere fact that the position classifier *preferred* to conduct an in-person desk audit for an upgrade at or above the GS-12 level is irrelevant. Under *Erickson*, she was not entitled to impose that mere preference on a person who is on military leave. The bottom line is that an in-person desk audit was not required. To say that Hayden was not eligible for an upgrade because he was unavailable for a discretionary audit that could have been performed via telephone or by interviewing his immediate supervisor violates USERRA. *See id.* at 1368 (permitting an employer to take an adverse action against an employee because of his military absence "would eviscerate the protections afforded by USERRA"). Accordingly, the Board erred in finding that the agency could avoid liability for failing to process the position upgrade request because Hayden was unavailable for an in-person desk audit.

Next, Hayden argues that the Board erred in determining that he was not entitled to a noncompetitive

position upgrade at the time his supervisor requested the upgrade. In support, Hayden points out that OPM regulations give agencies discretion to except certain actions from competitive procedures. 5 C.F.R. § 335.103(c)(3). One such exception is for a "promotion resulting from an employee's position being classified at a higher grade because of additional duties and responsibilities." *Id.* at § 335.103(c)(3)(ii). Hayden also argues that he qualified for a noncompetitive upgrade under the Air Force's civilian staffing rules.[1] As the Board recognized, Hayden's supervisor submitted the upgrade request because he was performing additional duties and responsibilities at the GS-12 level and because there were "not enough GS-12's [sic] to perform the duties." *Final Decision*, 2014 WL 6879135, at ¶ 4. Hayden submits that, in these circumstances, he was entitled to a noncompetitive position upgrade.

The agency responds that, even if the agency proceeded with the upgrade request, Hayden would have had to compete for the GS-12 position. In particular, the agency

---

[1] Specifically, the Air Force Manual provides that:

> If a position is upgraded due to accretion/assignment of additional higher grade duties and responsibilities, the incumbent may be noncompetitively promoted provided there is clear evidence that the employee continues to perform the same basic functions as in the former position, that there are no other employees serving in similar or identical positions to whom the duties could be assigned, and he/she meets all qualification and legal requirements for promotion.

Air Force Manual 36-203: Staffing Civilian Positions, ¶ 2.9.6 (Dec. 12, 2002) (Incorporating Change 1, June 2006).

submits that: (1) there was another GS-11 protocol specialist in the office who would have been eligible to compete; and (2) the surplus employee whose GS-12 position had been eliminated would have had priority over Hayden for any such position. According to the agency, the Board "properly determined that those employees' status constituted evidence supporting the agency's claim that it would not have promoted Mr. Hayden even if it had not considered his military absence when it decided not to upgrade the position." Resp't Br. 19.

As counsel for the agency conceded at oral argument, the agency had the burden to show, by a preponderance of the evidence, that Hayden would have had to compete for the position upgrade and that he would not have received it, regardless of his military service. Oral Argument at 16:48-17:15, *available at* http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2015-3073.mp3. Careful review of the Board's decision reveals that it did not hold the agency to that burden, however.

In the context of Hayden's discrimination claim, the Board merely noted the agency's argument that it could not upgrade the position noncompetitively because: (1) there were two protocol specialists at the GS-11 level, which would have triggered competition under the agency's regulations; and (2) even if the position were filled competitively, surplus employees "would have had internal priority over the appellant." *Final Decision*, 2014 WL 6879135, at ¶ 20. In the next sentence, however, the Board stated that, "*appellant thus could not show* he would have been placed automatically in the upgraded position or whether the position upgrade would have been approved." *Id.* (emphasis added). But the burden was not on Hayden to show he would have won any competition for the upgrade position. Having demonstrated that his military service was a motivating factor in the agency's decision to cancel his upgrade, Hayden satisfied his burden with respect to the discrimination claim, and the

burden shifted to the agency to show it would not have processed the upgrade without regard to his military service. *Erickson*, 571 F.3d at 1368; *Sheehan*, 240 F.3d at 1013.

On this record, we conclude that the Board failed to make sufficient factfindings with respect to: (1) whether Hayden would have had to compete for the position; and (2) whether he would have been successful in doing so. There are no findings as to whether the position could have been noncompetitively upgraded at the time the upgrade was requested. Nor is there any evidence or factfinding as to whether the surplused employee necessarily would have been chosen over Hayden. Although the Board states that Hayden would have had to compete for the upgraded position such that it "is not certain he would have been selected," those findings were in the context of Hayden's reemployment claim which, as discussed below, requires application of a different standard and different burden of proof. *Final Decision*, 2014 WL 6879135, at ¶ 29. The fact remains that, in the context of Hayden's *discrimination* claim, the agency had the burden to show that its decision to cancel the upgrade request would have remained the same even if his military leave was not a factor. Because there is insufficient evidence that, had the agency processed the upgrade at the time it was requested, Hayden would have had to compete for the position and would not have won, we vacate the Board's decision and remand for further findings.

Finally, Hayden argues that the Board erroneously credited the agency's argument that the A Flight Protocol Office no longer needed additional GS-12 officers after Hayden's return. Specifically, he argues that reliance on this evidence was erroneous "because the changes to the Protocol Office's organizational structure occurred after the Air Force cancelled Mr. Hayden's position upgrade request." Pet'r Br. 25.

It is undisputed that the workload in the A Flight Protocol Office decreased in July 2012. *Final Decision*, 2014 WL 6879135, at ¶ 5. Given this change, the Board found that, by the time Hayden returned to the office in December 2012, the office no longer needed additional GS-12 protocol officers. *Id.* at ¶ 25. Substantial evidence supports the Board's conclusion that, at the time Hayden returned to work, the agency had a legitimate reason for not upgrading Hayden's position to the GS-12 level. The record is devoid of evidence as to how long an upgrade request typically takes to process, however. The agency has not proven, accordingly, that, had the request gone forward in March 2012, Hayden would not have received the upgrade before the workload in the A Flight Protocol Office decreased. There is also no evidence as to how long any decrease in workload lasted, leaving largely unexplained why Hayden's upgrade was not renewed until so long after his return.

Because the agency could not use the discretionary in-person desk audit to justify its decision to cancel Hayden's upgrade request, and because the Board did not hold the agency to its burden with respect to competition at the time the request was made, we remand for further fact-finding. Accordingly, we vacate the Board's decision with respect to Hayden's discrimination claim.

## B. Reemployment Claim

USERRA also provides service members protection in the form of a right to reemployment in their civilian jobs after completing their military obligations. 38 U.S.C. § 4312(a). The regulations further provide that an agency "must consider employees absent on military duty for any incident or advantage of employment that they may have been entitled to had they not been absent." 5 C.F.R. § 353.106(c). The agency must therefore evaluate whether:

(1) "the 'incident or advantage' is one generally granted to all employees in that workplace and whether it was denied solely because of absence for military service;"

(2) "the person absent on military duty was treated the same as if the person had remained at work;" and

(3) "it was reasonably certain that the benefit would have accrued to the employee but for the absence for military service."

*Id.*

The Board concluded that Hayden was not entitled to reemployment at the GS-12 level when he returned from military leave. First, the Board found that Hayden could not establish that a position upgrade is a benefit generally granted to all agency employees. *Final Decision*, 2014 WL 6879135, at ¶ 28. In reaching this conclusion, the Board explained, "[a]n example of a 'generally granted' benefit of employment is a within-grade increase, which is granted when an employee performing at the fully satisfactory level or better accrues a certain amount of time-in-grade." *Id.*

According to Hayden, even if the position upgrade was not "an incident or advantage generally granted to all employees, as found by the MSPB, *consideration* for a position upgrade is available to all employees." Pet'r Br. 29-30. In support, Hayden argues that the agency "promoted another GS-11 Protocol Office employee, one who was not serving in the military, to a GS-12 position." *Id.* at 30. The evidence Hayden cites does not establish that the agency failed to consider him for an upgrade, however. The agency explains, moreover, that the employee who was promoted had a position with a full performance level of GS-12, which meant that it was a personal, noncompetitive promotion, not a position upgrade. Importantly,

there is no evidence that all employees are considered for position upgrades beyond their current performance levels.

Next, because the A Flight Protocol Office lost its additional duties four months after the upgrade request, and after the B Flight Protocol Office placed two GS-12 protocol officers on surplus status, the Board could not determine what would have happened if Hayden had remained at work. *Id.* ¶ 29. It concluded, however, that it was not "reasonably certain" that Hayden would have received the upgrade. Although Hayden was a valued employee with outstanding performance ratings, the Board found that "he and another employee were in GS-11 positions at the full performance level, unlike the employee who was promoted to GS-12." *Id.* at ¶ 31. The Board further noted that Hayden's performance "suffered after his return, which the agency documented," but that it was still willing to promote him if a GS-12 position became available. *Id.*

On appeal, Hayden argues that the upgrade was "reasonably certain" given: (1) testimony from the position classifier that she was aware of only ten upgrade requests out of the hundreds that she had processed that were not granted; (2) his outstanding performance reviews; (3) his prior upgrade from GS-9 to GS-11; and (4) the fact that he was already performing GS-12 duties. Although Hayden disagrees with the Board's factfindings, we decline his invitation to reweigh the facts on appeal. Substantial evidence supports the Board's determination that the position upgrade is not a generally granted benefit and that it was not reasonably certain that Hayden would have received it, a showing that, in this context, was Hayden's burden to make. As such, we affirm the Board's decision with respect to Hayden's reemployment claim.

## C.  Retaliation Claim

USERRA prohibits retaliation against employees for exercising their rights under the statute.   38 U.S.C. § 4311(b).  It provides that:

> An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter.  The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

*Id.*  The standard for a retaliation claim is the same as that for a discrimination claim: the employee must first establish that his protected actions were a motivating factor in the employer's adverse action, and then the burden shifts to the employer to establish that it would have taken the same action without regard to the employee's military service.  *Sheehan*, 240 F.3d at 1013.

Hayden argued that the agency retaliated against him for seeking assistance with the ESGR to enforce his USERRA rights.  The Board found that Hayden failed to present any evidence "that the agency bore any discriminatory animus towards him and he thus failed to meet his initial burden of proof."  *Final Decision*, 2014 WL 6879135, at ¶ 33.  To the contrary, the agency presented evidence that it did not need additional GS-12 Protocol Officers at the time, and that Hayden's supervisors "were concerned about helping him overcome a decline in his performance and prepare for eventual promotion to GS-12." *Id.*

On appeal, Hayden argues that the Board's retaliation analysis contradicts its finding that there was evidence the agency improperly considered his military service and that there was "animus based on his military service." Pet'r Br. 34. But Hayden attempts to equate discrimination based on his military service—which is the basis for his first claim—with retaliation based on his attempt to enforce his USERRA rights. Although the two claims utilize the same standard, they stem from different events. Importantly, Hayden's retaliation claim is that his consultation with the ESGR about his USERRA rights after his return from military service prompted an immediate negative performance evaluation. The Board found, however, that Hayden "admitted at the hearing that the concerns [about his performance] did not lack foundation." *Final Decision*, 2014 WL 6879135, at ¶ 7. The Board further found that Hayden's "performance suffered after his return, which the agency documented." *Id.* at ¶ 31. Given these factfindings, substantial evidence supports the Board's conclusion that Hayden failed to meet his burden with respect to retaliation.

CONCLUSION

For the foregoing reasons, we agree with the Board that Hayden failed to meet his burden of proof with respect to his reemployment and retaliation claims under USERRA. With respect to his claim of discrimination based on military service, however, we vacate the Board's decision and remand for further factfinding.

**AFFIRMED-IN-PART, VACATED-IN-PART, REMANDED**