NOTE: This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**CHASE M. LENTZ,**

*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**

*Respondent*

---

2022-2007

---

Petition for review of the Merit Systems Protection Board in No. SF-4324-16-0680-I-1.

---

Decided: November 4, 2022

---

CHASE M. LENTZ, Fresno, CA, pro se.

JOSHUA W. MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD T. BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges*.

PER CURIAM.

Chase M. Lentz, a veteran, was employed as a botanist by the Bureau of Land Management (BLM), which is a component of the Department of the Interior. After he resigned his position, he filed a petition with the Merit Systems Protection Board under the Uniformed Services Employment and Reemployment Rights Act (USERRA), complaining that Interior had retaliated against him for exercising his USERRA rights. Specifically, he alleged that his BLM supervisors provided negative references to prospective employers in retaliation for a USERRA complaint he had filed with the Department of Labor, while he was working at BLM, asserting that he had not been selected for various BLM vacancies because he was a veteran.

The Board denied Mr. Lentz relief, concluding that he did not prove that his pre-resignation USERRA complaint motivated his BLM supervisors to provide negative post-resignation employment references. *Lentz v. Department of Interior*, No. SF-4324-16-0680-I-1, 2022 WL 2389189 (M.S.P.B. June 30, 2022) (*Board Op.*). Mr. Lentz appeals, arguing that the Board improperly split this appeal from other appeals he had pending before the Board and, in any event, reached an unreasonable conclusion. Because there was no improper bifurcation that prevented a full and fair adjudication of the issues Mr. Lentz raised, and because he has not established a basis for disturbing the Board's factual findings under the applicable standard of review, we affirm.

I

Mr. Lentz worked as a GS-0430-11 botanist at BLM's Field Office in Redding, California, for several years, receiving "superior" performance appraisals in fiscal years 2007 through 2012 and "fully successful" appraisals in 2013 and 2014. *Lentz v. Department of Interior*, No. SF-4324-16-0680-I-1, 2016 WL 6236516 (M.S.P.B. Oct. 20, 2016) (Initial Decision, by Administrative Judge) (*AJ Op.*), Appx. 14; *see* Supplemental Appendix (SAppx.) 66, 81, 95.

Mr. Lentz's immediate supervisor—from August 24, 2014, to February 13, 2015—was Ms. Acridge, the Supervisory Resources Management Specialist for the BLM Redding Field Office. *AJ Op.*, Appx. 14; *see* SAppx. 51. Mr. Lentz's second-level supervisor was—from September 12, 2010, to February 13, 2015—Ms. Mata, the Field Manager for the BLM Redding Field Office. *AJ Op.*, Appx. 14; *see* SAppx. 44.

On May 15, 2014, Ms. Mata issued a letter of reprimand to Mr. Lentz, charging him with "acting outside the scope of [his] authority" and with "conduct unbecoming." *AJ Op.*, Appx. 14 (capitalization removed); *see* SAppx. 88–98. Six months later, on November 13, 2014, Ms. Acridge proposed a fourteen-day suspension, invoking the same two types of charges, based on additional alleged misconduct. *AJ Op.*, Appx. 14; *see* SAppx. 70–87. Ms. Mata partly sustained that proposed suspension on February 10, 2015, and Mr. Lentz resigned three days later. *AJ Op.*, Appx. 14; *see* SAppx. 54–69.

Both before and after resigning, Mr. Lentz applied for several positions (with BLM as well as other government agencies) and received job references from Ms. Mata and Ms. Acridge. *AJ Op.*, Appx. 14–15. Specifically, Ms. Mata wrote references on Mr. Lentz's behalf to (1) the U.S. Forest Service on December 17, 2013, and July 14, 2015; (2) the U.S. Army Corps of Engineers on April 21, 2015; and (3) the BLM Winnemucca Field Office on September 30, 2015. *Id.*, Appx. 14; *see* SAppx. 44–50. Ms. Acridge provided references to (1) the Bureau of Reclamation on March 2, 2015; (2) the BLM office in Oregon on March 18, 2015; (3) the BLM office in Nevada on June 2, 2015; and (4) the U.S. Army Corps of Engineers on April 22, 2015. *AJ Op.*, Appx. 14–15; *see* SAppx. 51–53. But Mr. Lentz secured none of the positions for which Ms. Mata and Ms. Acridge provided references. *AJ Op.*, Appx. 15.

In December 2014, before his resignation but after Ms. Mata had issued the letter of reprimand and Ms. Acridge had proposed the suspension, Mr. Lentz filed a complaint with the Department of Labor, as well as several appeals with the Board, alleging USERRA violations. *Id.* Specifically, he maintained that his non-selection for the positions for which he had applied was based on his military service, in violation of the employment protections USERRA affords to veterans. *Id.* Labor informed Ms. Mata of the USERRA claim in December 2014. *Id.*

Mr. Lentz also filed a complaint with Labor—and subsequently requested referral of his claim to the Office of Special Counsel—after his February 2015 resignation from BLM. *Id.* He attributed his failure to obtain post-BLM employment to the prospective employers' receipt of negative references from Ms. Mata and Ms. Acridge, who, he alleged, wrote them in reprisal for his December 2014 USERRA complaint. *Id.*, Appx. 13, 15. On August 7, 2016, after failing to obtain relief from Labor or the Office of Special Counsel, Mr. Lentz filed the present appeal with the Board, focusing on his non-selection for positions after his resignation from BLM. *Id.*; *see* SAppx. 38.

The Board administrative judge to whom the present appeal was assigned defined the issue raised by Mr. Lentz's appeal as "[w]hether the appellant was discriminated against based on his prior protected USERRA activities in the job references issued by [his supervisors]." *AJ Op.*, Appx. 16. The parties have not disputed that statement of the issue. *See id.*

After reciting USERRA standards, *see id.*, and confirming Board jurisdiction, *see id.*, Appx. 17, the AJ evaluated the evidence—including the job references at issue, sworn declarations from Ms. Mata and Ms. Acridge, and the documents associated with the disciplinary actions taken against Mr. Lentz—and concluded that none of the references suggested any "unlawful hostility or bias based on

[Mr. Lentz's] prior USERRA activity," *id.*, Appx. 20; *see id.*, Appx. 17–24. The AJ considered and found unpersuasive Mr. Lentz's argument that specific statements in the references were inconsistent, contradicted by other record evidence, or otherwise not credible. *See id.*, Appx. 19–20, 23–24. The AJ found that the "comments in the job references at issue were overall either neutral or positive," and any concerns noted in the references, *e.g.*, regarding Mr. Lentz's "communication abilities[,] were well supported by the specific incidents cited in the notice of proposed removal." *Id.*, Appx. 20. Nor was the timing of the references, *i.e.*, after Mr. Lentz engaged in protected USERRA activities, "suspicious," as the supervisors "simply w[ere] responding to inquiries from third parties after [Mr. Lentz] had already resigned the position," *id.*; *see id.*, Appx. 24 n.4, and temporal proximity here did not prove the alleged motive, *id.*, Appx. 24. And insofar as Ms. Mata's 2015 references were different from her 2013 one, she "plausibl[y] expla[ined]" that she had, during that interval, "perceiv[ed] a change in [Mr. Lentz's] workplace attitude and demeanor, as evidenced in the conflicts and communication issues documented in his reprimand and suspension decision." *Id.*, Appx. 23. As a result, the AJ determined that Mr. Lentz "failed to prove by preponderant evidence that his protected activity under USERRA was a motivating or substantial factor in the agency actions at issue." *Id.*, Appx. 24. What is more, he concluded that "even if [Mr. Lentz] had met his burden of proof on this issue, the agency nevertheless would have taken the same actions in the absence of his protected activity, for the valid reasons described above." *Id.*

Mr. Lentz filed a petition for review to the full Board in November 2016. SAppx. 39. On June 30, 2022, the Board denied the petition, affirmed the AJ's initial decision, and adopted that decision as the Board's final decision. *See id.*; *Board Op.* at *1. The Board agreed with the AJ's findings that there was "no inconsistency in the answers" in the

references, as "the questions on the . . . separate job references are different," *Board Op.* at *3, and that any changes over time in the references were more plausibly attributable to Mr. Lentz's changing workplace conduct than to any improper retaliatory motive, *see id.* at *4–5. The Board further concluded that there had been "no abuse of discretion by the administrative judge in considering the record as a whole, including the letter of reprimand and the notice and decision letter for [Mr. Lentz's] suspension," especially given that Mr. Lentz himself included the documents with his initial appeal, and the documents help "support the explanations of [Mr. Lentz's] supervisors regarding their responses to questions asked in the job references." *Id.* at *4. There was thus no suggestion of unlawful bias or hostility based on Mr. Lentz's past USERRA activity or that the activity "was a motivating or substantial factor in these identified job references." *Id.* The references instead "were either neutral or positive," and while Mr. Lentz may "have preferred only positive references, the neutral comments reflect . . . valid concerns regarding his performance in specific areas." *Id.* Finally, the Board rejected Mr. Lentz's argument that the AJ had been biased against him. *Id.* at *5.

The Board's decision became final on June 30, 2022, Appx. 31, and Mr. Lentz filed a petition for review on July 11, 2022, ECF No. 1, within the sixty days permitted by 5 U.S.C. § 7703(b)(1)(A). We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Under the substantial-evidence standard, the Board's findings of fact need only be "supported by such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Gallagher v. Department of Treasury*, 274 F.3d 1331, 1336 (Fed. Cir. 2001) (citation omitted). "As an appellate court," we broadly accept the Board's "credibility determinations" where they are not "inherently improbable or discredited by undisputed fact." *Pope v. United States Postal Service*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (citation omitted); *see Kahn v. Department of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010).[1]

USERRA provides that "[a]n employer may not discriminate in employment against or take any adverse employment action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter . . . or . . . has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b). A plaintiff bringing a USERRA retaliation claim must show the threshold premises, *i.e.*, an action to enforce a USERRA protection or exercise of a USERRA right, *see*, *e.g.*, *Kitlinski v. Merit Systems Protection Board*, 857 F.3d 1374, 1381 (Fed. Cir. 2017), and prove by a preponderance of the evidence that the USERRA-protected activity was "'a substantial or motivating factor' in the adverse employment action," *Sheehan v. Department of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001) (citation and footnote omitted); *see Hayden v. Department of Air Force*, 812 F.3d 1351, 1363 (Fed. Cir. 2016) ("The standard for a retaliation claim is the same as that for a discrimination claim . . . ." (citing *Sheehan*, 240 F.3d at 1013)). "If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason." *Sheehan*, 240 F.3d at 1013.

---

[1]    Because the Board affirmed the AJ's "initial decision" and adopted it as "the Board's final decision," *Board Op.* at *1, we hereafter refer to the AJ as the Board.

A

We first address Mr. Lentz's "bifurcation" argument—that the Board improperly decided this appeal separately from other appeals he had before the Board—in particular, a set of appeals that were back before the Board (in consolidated form) after we remanded them in *Lentz v. Merit Systems Protection Board*, 876 F.3d 1380 (Fed. Cir. 2017), along with two other appeals with which those remanded appeals were consolidated in 2022, *see* Appx. 2. But the government asserts that Mr. Lentz never presented any arguments regarding consolidation or bifurcation to the Board, *see* Resp. Br. 27, and Mr. Lentz identifies nothing to the contrary. He has thus forfeited this argument. *See Bosley v. Merit Systems Protection Board*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court."); *see also Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 n.1 (Fed. Cir. 2020) (same).

In any event, Mr. Lentz's argument lacks merit. He relies on this court's decision in 2017 reversing the Board's splitting of what he had brought as a single appeal into two related and overlapping cases, where that splitting prejudiced a full adjudication of the relevant claim. *Lentz*, 876 F.3d at 1382, 1386. Here, in contrast, Mr. Lentz brought separate appeals in the first place. And not only did he not ask the Board for consolidation of the present appeal with those remanded in 2017 (and the two additional appeals with which they were later consolidated), but he has not shown prejudice that would justify overriding the Board's exercise of its "broad discretion to control its own docket" and "substitut[ing] our judgment for that of the [B]oard in this regard." *Olivares v. Merit Systems Protection Board*, 17 F.3d 386, 388 (Fed. Cir. 1994).

Mr. Lentz's assertion that a lack of consolidation would prevent consideration of the totality of the evidence, *see*

Petr. Opening Br. 3–4, is also unavailing.  The appeals we remanded in 2017 address Mr. Lentz's claims regarding his resignation, *see Lentz*, 876 F.3d at 1386 (reversing the Board's bifurcation because both cases dealt with "involuntary resignation based on alleged coercive agency actions"); *accord* Appx. 2, 9–11 (consolidating the four appeals because all "involve the underlying allegations identified by the court that are relevant to the issue of the voluntariness of [Mr. Lentz's] resignation"), whereas this appeal focuses on the job references that his supervisors provided to prospective employers after his resignation.  Some overlap in documentary evidence does not require Board consolidation of proceedings concerned with different asserted wrongs.  Mr. Lentz himself says: "Whether or not I was rightfully or wrongfully disciplined does not answer the question of whether or not I was retaliated against for exercising my rights under USERRA . . . ."  Petr. Opening Br. 12.

Relatedly, Mr. Lentz's assertion that the Board erred not only by failing to order consolidation with the resignation-related appeals but also by considering the disciplinary documents in this appeal, *see id.* at 7, 12, provides no basis for vacatur.  That the merits of the disciplinary actions are at issue elsewhere does not deprive those actions and the conduct that prompted them of relevance here, where a key question is whether they, rather than an improper motive, influenced the supervisors' later job references.  The Board did not abuse its discretion in considering this evidence, *see* 5 C.F.R. § 1201.41(b)(3), especially because Mr. Lentz included those documents in his appeal, *see Board Op.* at *4.

## B

Mr. Lentz's remaining arguments for disturbing the Board's decision also fall short.  The Board determined that there were two independent bases for denying relief, *see AJ Op.*, Appx. 24, but Mr. Lentz challenges only one of them

on appeal, *see* Petr. Opening Br. 6–12. Specifically, the Board determined not only that Mr. Lentz "failed to prove by preponderant evidence that his protected activity under USERRA was a motivating or substantial factor in the agency actions at issue" but also that "the agency nevertheless would have taken the same actions in the absence of his protected activity, for the valid reasons described above," *AJ Op.*, Appx. 24, *i.e.*, Mr. Lentz's "conflicts with management," *id.* Mr. Lentz has not challenged this second basis, which is supported by substantial evidence. *See* SAppx. 44 (Ms. Mata's declaration); SAppx. 46–50 (Ms. Mata's references); SAppx. 51 (Ms. Acridge's declaration); SAppx. 52–53 (Ms. Acridge's references); SAppx. 54–99 (discipline-related documents). That unchallenged basis suffices to sustain the Board's decision.

In any event, the Board's finding that Mr. Lentz failed to prove an improper motive, *see Board Op.* at *2–5, is supported by substantial evidence. To establish that his supervisors had a retaliatory motive, Mr. Lentz asserts that (1) "factually inaccurate references . . . that have a negative result . . . suggest unlawful hostility or bias," Petr. Opening Br. 5, and (2) "the relationship between the references and [his] USERRA activity," specifically that "the responses came after [his] . . . activity," is "suspicious" and shows an improper motive, *id.* at 11. We reject these asserted bases for setting aside the Board's finding.

1

Mr. Lentz first accuses his supervisors of "[l]ying by omission" and thereby providing factually inaccurate references, and he maintains that these inaccuracies support inferring a retaliatory motive. *Id.* at 4; *see id.* at 5–11. These complaints are ultimately directed to the Board's weighing of facts and evaluating of witness credibility. *See id.* at 1 ("In this appeal, *I dispute the Board's interpretation of the evidence and determinations* which are discredited by undisputed fact. . . . In my appeal to . . . the Board[], I raised

the issue of *factually inaccurate* employment references given by my supervisors . . . ." (emphasis added)); *contra id.* ("This is not a request to re-weigh conflicting evidence. This is not a request to re-evaluate credibility determinations . . . ."). But we must defer to the Board's evaluation of credibility, *see Pope*, 114 F.3d at 1149, and we cannot "reweigh evidence on appeal," *Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) (citation omitted). Here, the Board carefully weighed the references, disciplinary documents, and declarations by Mr. Lentz's supervisors, *see AJ Op.*, Appx. 17–24; *Board Op.* at *2–5, and substantial evidence supports the Board's finding that the references were neither negative nor lies by omission.

None of the "inconsistencies" identified by Mr. Lentz deprive the Board's findings of substantial-evidence support. *See* Petr. Opening Br. 8–11. Mr. Lentz faults Ms. Mata for stating that he "'didn't really have an opportunity to function in' a leadership role," and Ms. Acridge for stating that she had "'no direct experience to speak to' regarding [his] leadership style or approach," despite both supervisors having elsewhere acknowledged that his position "[a]s the botany team lead" involved "consensus building to provide team leadership when given the lead in assignments." *Id.* at 8 (citations and emphases omitted); *see id.* at 9–11 (citing supervisor statements describing him as "mentor/technical lead for student interns," "lead botanist," "program lead for botany," "leader for projects initiated by botanical actions," and "coordinating 'the work of seasonal/temporary employees'" (emphases omitted)); *see* SAppx. 46–53 (supervisor references). That Mr. Lentz's position description makes references to "team leadership" and "botany team lead," however, does not imply that he in fact had the opportunity to perform those functions. *Cf.* SAppx. 49–50 (describing Mr. Lentz's "experience in the field of Program Leadership" while acknowledging that he has not been able to "perform in the roles described as

above," *i.e.*, "lead or supervisory duties").  Nor does it imply that Ms. Mata and Ms. Acridge observed his performance of those functions, especially because Ms. Acridge had held her position for less than a year by the time Mr. Lentz resigned and had only supervised him for two-and-a-half months due to him being on sick leave.  *See Board Op.* at *3.

Even if Ms. Mata and Ms. Acridge had observed Mr. Lentz performing leadership functions, *see* Petr. Opening Br. 10–11, their statements are still internally consistent, as the questions to which they responded were all phrased differently, *see Board Op.* at *3.  In particular, Ms. Mata's 2013 reference explained the differences between the leadership skills exercised by Mr. Lentz as botany program lead and those required by the supervisory roles for which he was applying:

> Chase currently manages the botany and range program for the field office. . . .  He does a good job of developing project level budgets and tracking implementation and accomplishments. . . .  Chase needs exposure to higher level work in order to assess his potential as a supervisor and program lead.  He has been managing his program at the local level and coordinates well with our state office but has not had the opportunity to perform in situations that would demonstrate his abilities to be a first line supervisor or program lead at the Supervisor's Office level. . . .  During my time in the Redding Field Office Chase has only served as the program lead for botany, range and weeds and as the primary contact for several seasonal employees and contractors.  He has not served as the official supervisor of record for any employees, although I know that he is very interested in pursuing supervisory positions. . . .  I have not seen Chase perform in [any] roles [involving] . . . lead or supervisory duties . . . .  With some mentoring and time to grow

> into a supervisory role he could serve in that type
> of position but has not had the chance to work on
> those roles within this office.

SAppx. 49–50. The Board could reasonably find no contradictions here, and no inconsistencies with the references Ms. Mata provided after Mr. Lentz's resignation. *See* SAppx. 46 ("I think that . . . his Leadership Skills . . . would improve given time, [but he] didn't really have an opportunity to function in that role[.]"); *AJ Op.*, Appx. 20, 23–24; *Board Op.* at *3–5. Similarly, despite supervising Mr. Lentz for such a brief time, Ms. Acridge still provided positive comments regarding his "[l]eadership capabilities"; it was only his "leadership style or approach" with which she professed to be unfamiliar. SAppx. 52–53; *see Board Op.* at *3.

In sum, substantial evidence supports the Board's decision to reject Mr. Lentz's assertion "that the employment references provided by Mata and Acridge were not accurate and factual and were not honest." Petr. Opening Br. 4. And because these references were not factually inaccurate, they do not demand an inference of "unlawful hostility or bias." *Id.* at 5.

2

As proof of an improper motive, Mr. Lentz further points to the fact that the references were provided only after he had engaged in protected USERRA activity. *See id.* at 11–12. But the Board properly found that mere temporal proximity is insufficient here. *See AJ Op.*, Appx. 24. A USERRA retaliation claim necessarily arises only after a claimant has engaged in a protected USERRA activity, so the fact that "the responses came after [Mr. Lentz's] protected USERRA activity," Petr. Opening Br. 11, does not alone show improper motive, especially given that Ms. Mata and Ms. Acridge were "simply . . . responding to inquiries from third parties," *AJ Op.*, Appx. 20; *see id.*, Appx. 24 n.4. Mr. Lentz has not alleged anything else to compel

an inference that Ms. Mata or Ms. Acridge had acted with a retaliatory motive.  He has never identified, for instance, any "inconsistencies between the proffered reason and other actions of the employer," his "employer's expressed hostility towards members protected by the statute together with knowledge of [Mr. Lentz's] . . .  activity," or "disparate treatment of certain employees compared to other employees with similar work records or offenses." *Sheehan*, 240 F.3d at 1014.

### III

For the foregoing reasons, we affirm the decision of the Board.

The parties shall bear their own costs.

**AFFIRMED**