John J. GALLAGHER, Petitioner,

v.

DEPARTMENT OF THE TREASURY, Respondent.

No. 00–3108.

United States Court of Appeals, Federal Circuit.

Nonprecedential Opinion Issued Sept. 5, 2001.

Precedential Opinion Issued Dec. 12, 2001.

Frank M. Dale, Jr., Swidler Berlin Shereff Friedman, LLP, of Washington, DC, argued for petitioner. With him on the brief were Mark J. Plumer and David F. Klein.

Monica J. Palko, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With her on the brief were David M. Cohen, Director; and Deborah A. Bynum, Assistant Director.

Before NEWMAN, RADER, and LINN, Circuit Judges.

LINN, Circuit Judge.

John J. Gallagher seeks review of the final decision of the Merit Systems Protec-

tion Board (the "Board"), affirming the decision of the Department of the Treasury (the "Agency") that the petitioner does not qualify for Law Enforcement Officer ("LEO") retirement coverage because he failed to establish by a preponderance of the evidence that his actual duties were primarily LEO-qualifying. *Gallagher v. Dep't of Treasury*, No. NY–0831–99–0034–I–2 (MSPB Sept. 11, 1999). Because the Board's factual determinations are supported by substantial evidence and its legal conclusions are not arbitrary or capricious, an abuse of discretion, and are otherwise in accordance with the law, this court affirms.[1]

## BACKGROUND

Gallagher became employed by the United States Customs Service ("Customs") as an Import Specialist in November 1971. He transferred to the position of Customs Patrol Officer on February 3, 1974. On June 22, 1975, he became a Special Agent. The positions of Customs Patrol Officer and Special Agent were both designated as LEO positions. On August 19, 1976, Gallagher transferred to the position of Customs Inspector ("Inspector"). Gallagher served exclusively on a Customs' Contraband Enforcement Team called the "Exodus" team. This team investigated violations of law involving exported merchandise. He served in that position until January 18, 1987, when he was promoted to Supervisory Customs Inspector, which position he still holds.

Gallagher filed for LEO credit for his service as an Inspector and Supervisory Inspector on December 12, 1994. Treasury denied his application on September 24, 1998, finding that Gallagher performed a variety of processing and inspectional duties in support of the enforcement of customs requirements, but "did not perform primary duties involving investigating, apprehending or detaining individuals suspected or convicted of offenses against the criminal laws of the United States, as 5 U.S.C. § 8331(2) plainly requires." *Id.*, slip op. at 5.

After the agency denied the application, Gallagher appealed to the Board. In the initial decision, which became the final decision of the Board on October 16, 1999, the administrative judge found that Gallagher's position description as Inspector emphasized regulatory investigations and listed support of the criminal investigative program as the last of a number of major duties. The administrative judge thus found that the position description does not support LEO credit. The administrative judge, however, recognizing that actual duties and not position description control entitlement to LEO credit, analyzed the evidence regarding Gallagher's actual duties. This evidence related to the *Bingaman*[2] factors and consisted of Gallagher's testimony, as well as the testimony of Richard Peeler, Frederick Tingly, Wilburn Stringer, Douglas Knorr, and Steven Lofredo. Gallagher's testimony related to the duties he performed and the hours he worked.

---

**1.** Gallagher also seeks review of the Board's determination that it does not have jurisdiction over the Agency's designation of his position as non-covered. In other words, Gallagher would like his position description to be designated by OPM as LEO qualifying based on the actual duties he performs. However, because we affirm the Board's determination that Gallagher's actual duties are not LEO-

qualifying, any argument that his position should be designated as LEO-covered based on those duties he performs is moot. Consequently, we need not, and do not, reach the jurisdictional issue raised by Gallagher.

**2.** *Bingaman v. Dep't of the Treasury*, 127 F.3d 1431 (Fed.Cir.1997).

Peeler is a retired Federal employee who had worked as an Inspector with specialized enforcement teams from 1981 through 1986. Peeler testified that based on his observation, Gallagher's primary duties as an Inspector were the interdiction of narcotics and prohibited merchandise entering or leaving the country and the apprehension of people who have warrants outstanding against them. Peeler also testified that in about 98% of the cases, inspections performed by Customs Inspectors result in no enforcement action, arrest, or seizure.

Tingley is a reemployed annuitant with the Immigration and Naturalization Service, who had worked for Customs in the capacity as Chief of Position Classification and Compensation Policy. Tingley testified that it was the sole responsibility of Special Agents within the Office of Investigations to conduct investigations into suspected violations of the law, and it was only when a person was armed, carrying explosives, or somehow a danger to people around him that an Inspector would detain that person.

Stringer is Chief Inspector for Customs and has worked with Gallagher at the Port of Buffalo for a number of years. He testified that Gallagher supervises Inspectors who perform primary screening of vehicles entering the United States and perform secondary inspections on vehicles sent around to the secondary area for further search, and he noted that 99% of the traffic entering that port is in compliance with the laws and regulations of the United States. Stringer also testified that while Inspectors may have to overpower individuals and handcuff them in some instances, the most common enforcement at the Buffalo port is the arrest for an existing state or local warrant. Furthermore,

Stringer testified that only about 10–15% of an Inspector's tour of duty is spent on processing enforcement actions and the remainder of time is spent screening traffic, making secondary inspections, and working various counter operations and paperwork.

Knorr is a former Customs Special Agent who had worked with Gallagher on the Exodus team. He testified that some of the work on that team was investigational and some was inspectional.

Lofredo is Gallagher's supervisor. He testified that the Inspectors he supervises perform screening functions, and that where a violation of Federal law is suspected the Office of Investigations is contacted to handle the matter. Lofredo also testified that his Inspectors perform administrative functions and that arrests are infrequent, noting that in 1998 only forty-one arrests for warrant and non-warrant matters were made at the Buffalo port in 1998 out of over nine million conveyances during that period of time.

Based on this evidence, the administrative judge found, as might be suspected, that the vast majority of persons crossing the border are law-abiding persons and not criminal suspects. The administrative judge concluded from this that Gallagher's job activities did not include frequent direct contact with criminal suspects and were not unusually hazardous. Furthermore, the administrative judge found that while Gallagher was authorized to carry a firearm, he did not interrogate witnesses or give *Miranda* warnings on a regular basis. The administrative judge also noted that although Gallagher occasionally worked long hours and could be called in to work on his day off, he generally did not work long hours and was not actually on call twenty-four hours a day. Finally, the

administrative judge noted that Gallagher did not have to maintain a level of physical fitness in his position as an Inspector.

In sum, the administrative judge found that Gallagher's primary duties did not capture the essence of what Congress intended to be law enforcement work in the sense of the LEO statute. Indeed, his primary duties were ones specifically excluded from the regulatory definition of a law enforcement officer at 5 C.F.R. § 831.902, namely, maintaining law and order, protecting life and property, guarding against or inspecting for violations of law, and investigating persons other than persons who are suspected or convicted of offenses against the criminal laws of the United States. Thus, the administrative judge concluded that Gallagher failed to show that a significant portion of his time as an Inspector was spent on duties that were consistent with "the front-line law enforcement work entailing unusual physical demands and hazards" required for LEO credit, despite the fact that some of his work held a significant potential for hazard. *Gallagher*, slip op. at 13.

Gallagher timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

■ This court must affirm a Board decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c)(1)-(3) (2000); *see also Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed.Cir.1984). The burden of establishing reversible error in the Board's decision rests upon Gallagher. *See Harris v. Dep't of Veterans Affairs,* 142 F.3d 1463, 1467 (Fed.Cir.1998).

Gallagher asserts that the administrative judge misconstrued and misapplied the statutory standard for granting LEO credit. In particular, Gallagher contends that the administrative judge construed the term "investigation" as something more than "the act or process of observing or studying by close examination and systematic inquiry," which definition the Board set forth in *Ferrier v. Office of Pers. Mgmt.,* 60 M.S.P.R. 342, 347 (1994). Gallagher contends that this must be so because he presented detailed corroborating testimony and hundreds of pages of documents describing how he employs direct questioning, observation, search techniques, and sophisticated investigational tools, including crime databases shared with other state and federal law enforcement agencies, to ferret out evidence of criminal activity.

Gallagher also contends that the administrative judge construed the term "apprehension" as something more than "the seizure, taking, or arrest of a person on a criminal charge," which definition the Board set forth in *Ferrier v. Office of Pers. Mgmt.,* 66 M.S.P.R. 241, 244 (1995). According to Gallagher this must be so because the evidence establishes that Gallagher's duty is to apprehend both persons seeking to enter the United States where that person is subject to an arrest warrant and persons he may, through questioning or searching, suspect have violated a criminal law. Moreover, the evidence establishes that he in fact makes or supervises between two and five arrests per month and in so doing detains the suspect at the detention cells maintained at the Customs facility.

The foregoing arguments are essentially that Gallagher is a law enforcement officer because he is involved in criminal investigations and he arrests and detains criminals. However, that is not the standard that the Board applies in determining whether one qualifies for law enforcement officer credit. Something more is required before the employee can be said to have engaged in the " 'frontline law enforcement work,' entailing unusual physical demands and hazards" that is necessary for "a particular position" to "qualif[y]" as a "law enforcement officer" under 5 U.S.C. § 8331(20). *Hannon v. Dep't of Justice*, 234 F.3d 674, 680 (Fed.Cir.2000) (internal citations omitted); *see also Hall v. Dep't of Treasury*, 264 F.3d 1050, 1055–57 (Fed. Cir.2001).

■ The definition of law enforcement officer in 5 U.S.C. § 8331(20) is strictly construed. *Hannon*, 234 F.3d at 677. The Board has developed six factors that it uses to determine whether a particular employee qualifies as a law enforcement officer. *Id.* (citing *Bingaman*, 127 F.3d at 1436). We have noted that though no single factor is essential or dispositive, these factors "capture the essence of what Congress intended." *Id.; Hall*, 264 F.3d at 1056–57. Thus, a law enforcement officer "commonly (1) has frequent direct contact with criminal suspects; (2) is authorized to carry a firearm; (3) interrogates witnesses and suspects, giving *Miranda* warnings when appropriate; (4) works for long periods without a break; (5) is on call 24 hours a day; and (6) is required to maintain a level of physical fitness." *Id.* (quoting *Bingaman*, 127 F.3d at 1436). In addition, the Board has placed the further gloss on the definition of law enforcement officer that the critical factor in determining whether a particular position so qualifies is whether it involves " 'frontline law enforcement work,' entailing unusual physical demands and hazards." *Id.* (quoting *Peek v. Office of Pers. Mgmt.*, 63 M.S.P.R. 430, 433–34 (1994), *aff'd*, 59 F.3d 181 (Fed. Cir.1995) (table)). The Board must also consider whether the primary duties of an employee's position are investigation, apprehension, or detention. Primary duties are those that: a) are paramount in influence or weight, in other words, constitute the basic reasons for the existence of the position; b) occupy a substantial portion of the individual's working time over a working cycle; and c) are assigned on a regular recurring basis. 5 C.F.R. § 831.902.

■ In this case, the administrative judge determined that Gallagher's primary duties were not investigation, apprehension, or detention. The administrative judge analyzed the evidence in view of the *Bingaman* factors and found that while Gallagher is authorized to carry a firearm, he does not have frequent direct contact with criminal suspects; and the contact he does have is not unusually hazardous. Furthermore, the administrative judge found that Gallagher does not interrogate witnesses and give *Miranda* warnings on a regular basis, he does not generally work long hours, nor was he actually on call twenty-four hours a day. Finally, the administrative judge found that Gallagher was not required to maintain any specific level of physical fitness as an Inspector. This decision of the administrative judge became that of the Board when no petition by Gallagher was filed and the Board chose not to reopen the case on its own.

The determination of factual issues and the drawing of appropriate inferences from them is for the administrative judge and the Board, not for this reviewing court. In view of the testimony of Tingly, Stringer,

Knorr, and Lofredo, we can say that the administrative judge's findings are "supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," i.e., substantial evidence. *Hogan v. Dep't of the Navy,* 218 F.3d 1361, 1364 (Fed.Cir.2000).

The evaluation of and weight to be given to the various *Bingaman* factors and the other evidence in the record are judgment calls that rest primarily within the discretion. of the administrative judge and the Board. *Hannon,* 234 F.3d at 681. Here the administrative judge, based on consideration of all the relevant factors, concluded that Gallagher had not established law enforcement officer status. The Board adopted that position. Since the administrative judge and the Board considered the relevant factors, it is not our function to substitute our judgment for that of the agency regarding the weight to be given them. *Id.* We review the Board's ultimate determination whether a particular employee is a law enforcement officer under 5 U.S.C. § 8331(20) under an arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law standard. 5 U.S.C. § 7703(c) (2000). We cannot say that, considering all the circumstances, the Board's decision that Gallagher was not a law enforcement officer was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Board.

AFFIRMED.