# United States Court of Appeals for the Federal Circuit

---

**JOHN PAUL JONES, III,**
*Petitioner*

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
*Respondent*

---

2016-1792

---

Petition for review of the Merit Systems Protection Board in No. DE-4324-15-0233-I-1.

---

Decided: August 22, 2016

---

JOHN PAUL JONES, III, Albuquerque, NM, pro se.

AARON E. WOODWARD, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., ALLISON KIDD-MILLER; ROBERT L. THOMAS, Office of the General Counsel, United States Department of Health & Human Services, Atlanta, GA.

---

Before NEWMAN, MOORE, and WALLACH, *Circuit Judges.*

WALLACH, *Circuit Judge.*

On various dates in 2015, veteran John Paul Jones, III, filed sixteen appeals with the Merit Systems Protection Board ("MSPB"), alleging that the U.S. Department of Health and Human Services ("HHS" or "Government") violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301–4333 (2012)),[1] when it did not select him for various job vacancies. An administrative judge ("AJ") consolidated the appeals and ultimately denied Mr. Jones's request for relief in an Initial Decision. *See Jones v. Dep't of Health & Human Servs.*, No. DE-4324-15-0233-I-1 (M.S.P.B. Mar. 25, 2016) (Resp't's App'x 25–38). The AJ's Initial Decision became the Final Decision of the MSPB when Mr. Jones did not timely file a petition for review of that decision before the MSPB. *See* 5 C.F.R. § 1201.114(e) (2016).

Mr. Jones appeals, contending the AJ's decision contains various legal and factual errors. The Government alleges that we lack jurisdiction to hear Mr. Jones's appeal or, in the alternative, that the AJ's decision was correct and should be affirmed. We conclude that we have jurisdiction over Mr. Jones's appeal and that the AJ properly denied his claims. We therefore affirm.

DISCUSSION

I. Subject Matter Jurisdiction

As an initial matter, we must address whether this court possesses subject matter jurisdiction over Mr. Jones's appeal. *See Ruhrgas AG v. Marathon Oil Co.,*

---

[1]    Congress passed USERRA to, inter alia, "prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3).

526 U.S. 574, 583 (1999) ("[A] federal court [must] satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." (citation omitted)). The AJ stated that his Initial Decision would become final on April 29, 2016, unless Mr. Jones sought further review before the MSPB by that date. Resp't's App'x 38. Mr. Jones did not seek further review from the MSPB, but rather filed his petition for review with this court on April 4, 2016, twenty-five days before the AJ's Initial Decision became final. *See Jones v. Dep't of Health & Human Servs.*, No. 2016-1792, Docket No. 1 at 2 (Fed. Cir. Apr. 5, 2016).

The Government asserts that we "lack[] jurisdiction [to hear Mr. Jones's appeal] because[,] at the time Mr. Jones filed his appeal, the [AJ's] decision was not yet final," such that there was no final MSPB decision from which Mr. Jones could appeal. Resp't's Br. 3. As a result, the Government argues that "Mr. Jones would need to refile his appeal in order to properly invoke this [c]ourt's review power." *Id.* at 4 (citation omitted). We disagree.

We possess jurisdiction over an appeal from a "final decision" of the MSPB. 28 U.S.C. § 1295(a)(9) (2012). To obtain review in this court, "a petition to review a . . . *final* decision of the [MSPB] shall be filed . . . within [sixty] days *after* the [MSPB] issues notice" of its final decision. 5 U.S.C. § 7703(b)(1)(A) (2012) (emphases added). We have held that, to invoke the court's jurisdiction to appeal the MSPB's final decision, a petitioner must file a petition for review within the time frame provided in 5 U.S.C. § 7703(b)(1)(A). *See Oja v. Dep't of the Army*, 405 F.3d 1349, 1357 (Fed. Cir. 2005) (The time for filing an appeal pursuant to 5 U.S.C. § 7703(b)(1) "is 'statutory, mandatory, [and] jurisdictional.'" (quoting *Monzo v. Dep't*

*of Transp.*, 735 F.2d 1335, 1336 (Fed. Cir. 1984)));[2] *see also* Fed. R. App. P. 15(a)(1) ("Review of an agency order is commenced by filing, *within the time prescribed by law*, a petition for review with the clerk of a court of appeals authorized to review the agency order." (emphasis added)).[3]

Nevertheless, we also have held that, when a petitioner files a petition for review with this court before an AJ's initial decision becomes final, the petitioner's appeal ripens once that initial decision becomes the final decision of the MSPB. *See Schmitt v. Merit Sys. Prot. Bd.*, 315

---

[2]   It may be time to ask whether we should reconsider *Oja* and *Monzo* in light of recent Supreme Court precedent finding some statutory time limits nonjurisdictional. *See, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1630–33 (2015) ("Congress's separation of a filing deadline from a jurisdictional grant often indicates that the deadline is not jurisdictional."). As previously stated, we possess jurisdiction to review a final decision of the MSPB under 28 U.S.C. § 1295(a)(9); however, the filing deadline is codified under 5 U.S.C. § 7703(b)(1). Notwithstanding the Supreme Court's decision in *Kwai Fun Wong*, we need not answer that question to resolve the instant appeal and, in any event, we could not do so as a panel because *Oja* and *Monzo* may be overruled only by this court en banc. *See Deckers Corp. v. United States*, 752 F.3d 949, 966 (Fed. Cir. 2014) (explaining that only an en banc court, intervening Supreme Court precedent, or Congressional change of an underlying statute may overrule prior precedential panel decisions).

[3]   Rules 1–2 and 15–21 govern appeals from the MSPB. *See* Fed. R. App. P. 20 ("All provisions of these rules, except Rules 3–14 and 22–23, apply to the review or enforcement of an agency order."); *see also* Fed. R. App. P. 15(a)(4).

F. App'x 278, 280 (Fed. Cir. 2009) (unpublished) ("Mr. Schmitt prematurely appealed to this court following the AJ's initial decision. After the [MSPB] denied Mr. Schmitt's petition for review, the AJ's [initial] decision became final and Mr. Schmitt's prematurely filed appeal ripened." (citation omitted)); *see also Galloway v. Dep't of Agric.*, No. 2009-3279, 2010 WL 2026055, at *1 (Fed. Cir. 2010) (unpublished) (similar). *Contra Pinder v. U.S. Postal Serv.*, 267 F. App'x 938, 2008 WL 565449, at *1 (Fed. Cir. 2008) (unpublished) ("Because Pinder's petition for review in this court was filed before the AJ's [initial] decision became final, the petition is premature. Thus, we dismiss.").

Our conclusion in *Schmitt* is consistent with our precedent in analogous circumstances. For example, in *In re Graves*, we held that an appellant's prematurely-filed notice of appeal "ripened into an effective [timely] appeal" once the underlying original administrative decision became final. 69 F.3d 1147, 1151 (Fed. Cir. 1995); *see id.* ("Our jurisdiction to hear the appeal was, in effect, suspended until" the decision of the Board of Patent Appeals and Interferences became final. (footnote omitted)); *accord Craker v. Drug Enf't Admin.*, 714 F.3d 17, 25 (1st Cir. 2013) (favorably citing *Graves* in finding that it retained jurisdiction over a prematurely-filed appeal because, inter alia, it "suspended and then resumed consideration of a petition for review" once the decision of the Drug Enforcement Administration became final). *But cf. W. Union Tel. Co. v. FCC*, 773 F.2d 375, 378 (D.C. Cir. 1985) ("[A] challenge to now-final agency action that was filed before it became final must be dismissed" as "jurisdictional[ly] bar[red]" (citations omitted));[4] *accord Council Tree*

---

[4] Similar to 5 U.S.C. § 7703(b)(1)(A), the provision at issue in *Western Union* required a petition for review to be filed "within [sixty] days after" entry of a final agency

*Commc'ns, Inc. v. FCC*, 503 F.3d 284, 291 (3d Cir. 2007) (favorably citing *Western Union* in dismissing a prematurely-filed petition appealing a non-final order). The decision in *Graves* to treat a prematurely-filed appeal of a non-final order as effectively stayed until the underlying agency order becomes final finds support in the Supreme Court's observation that "a stay is as much a refusal to exercise federal jurisdiction as a dismissal," *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983), a position that the First Circuit has endorsed, *see Craker*, 714 F.3d at 25 (favorably citing *Moses* for the same proposition).

The D.C. Circuit's decision in *Western Union* is relevant, but it neither binds us nor persuades us to dismiss Mr. Jones's appeal. "[D]ecisions of the regional circuits [relevant to] issues within our exclusive jurisdiction," such as our jurisdiction over appeals from the MSPB, "are not binding on this court," *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1372 (Fed. Cir. 2001) (citation omitted), but we may nevertheless consider those decisions for guidance, *see Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1337 (Fed. Cir. 2008). In its decision, the D.C. Circuit did not address the Supreme Court's decision in *Moses*. *See generally W. Union*, 773

---

order.   773 F.2d at 376 (discussing 28 U.S.C. § 2344 (1982)). In reaching its conclusion, the D.C. Circuit rejected the argument that "within [sixty] days" in the statute "establish[ed] sixty days after entry [of the final order] as the filing deadline"; instead, it found that "within" "establish[ed] the sixty-day period after entry as the filing 'window.'" *Id.* It reasoned that, "[i]f the intent were to establish a filing deadline rather than a filing window, [the statute] would more naturally have been phrased 'no later than [sixty] days after . . . entry[,]' rather than 'within [sixty] days after . . . entry.'" *Id.*

F.2d 375. Moreover, *Western Union* does not account for the recent trend in Supreme Court opinions finding statutory time limits nonjurisdictional, *see, e.g.*, *Kwai Fun Wong*, 135 S. Ct. at 1630–33, and the D.C. Circuit does not appear to have revisited the principle articulated in *Western Union* despite that recent Supreme Court precedent, *see, e.g.*, *Blue Ridge Envtl. Def. League v. Nuclear Regulatory Comm'n*, 668 F.3d 747, 756 (D.C. Cir. 2012) (reaffirming the principle articulated in *Western Union* and its progeny). Thus, we find the analysis in *Western Union* incomplete.

The facts of Mr. Jones's appeal are similar to those in *Schmitt*, such that we find it appropriate to assert jurisdiction over his appeal. Like the petitioner in *Schmitt*, Mr. Jones filed his petition for review with this court before the AJ's Initial Decision became the Final Decision of the MSPB—i.e., he appealed too early. And like the decision under review in *Schmitt*, the AJ's Initial Decision became the Final Decision under review on appeal. This is not a case where some claims remained pending before the MSPB, *see Baiamonte v. Potter*, 345 F. App'x 561, 562–63 (Fed. Cir. 2009) (unpublished) (dismissing prematurely-filed appeal from the United States Postal Service Board of Contract Appeals when some claims remained pending below), or where Mr. Jones sought review of the MSPB's final decision *after* the sixty-day time limit in 5 U.S.C. § 7703(b)(1)(A), *see* Fed. R. App. P. 26(b)(2) (explaining that the court "may not *extend* the time to file . . . a notice of appeal from . . . an order of an administrative . . . board . . . unless specifically authorized by law"). Our conclusion also finds support in the equitable principle of fair play inherent to the judiciary. *Cf. McDonald v. Mabee*, 243 U.S. 90, 91 (1917) ("[G]reat caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact." (Holmes, J.) (citation omitted)). Therefore, we assert jurisdiction over the appeal. *See Schmitt*, 315 F. App'x at 280.

## II. Standard of Review

We next turn to the merits of Mr. Jones's appeal. As stated above, Mr. Jones alleges that the AJ committed various legal and factual errors. We affirm the MSPB's decision unless, inter alia, it is "not in accordance with law," 5 U.S.C. § 7703(c)(1), or "unsupported by substantial evidence," *id.* § 7703(c)(3). We review the MSPB's legal determinations de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). "Substantial evidence is more than a mere scintilla" of evidence, *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), but "less than the weight of the evidence," *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). As the petitioner, Mr. Jones "bears the burden of establishing error in the [MSPB's] decision." *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) (citation omitted).

## III. The AJ Properly Denied Mr. Jones's USERRA Claims

### A. Legal Framework

As stated above, "[t]he USERRA prohibits discrimination in employment on the basis of military service." *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1012 (Fed. Cir. 2001). "[A]n employee making a USERRA claim of discrimination . . . bear[s] the initial burden of showing . . . that the employee's military service was a substantial or motivating factor in the adverse employment action." *Id.* at 1013 (internal quotation marks and citation omitted). "[M]ilitary service is a [substantial or] motivating factor for an adverse employment action if the employer relied on, took into account, considered, or conditioned its decision on the employee's military-related absence or obligation." *McMillan v. Dep't of Justice*, 812 F.3d 1364, 1372 (Fed. Cir. 2016) (internal quotation marks and citation omitted).

An employee may prove discriminatory motivation "by either direct or circumstantial evidence." *Sheehan*, 240

F.3d at 1014 (citation omitted). Absent direct evidence, the MSPB may infer discriminatory motivation from, inter alia,

> [(1)] proximity in time between the employee's military activity and the adverse employment action, [(2)] inconsistencies between the proffered reason and other actions of the employer, [(3)] an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and [(4)] disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Id.* (citation omitted). We commonly refer to these four elements as the "*Sheehan* factors." *McMillan*, 812 F.3d at 1373 (capitalization omitted).

An employee meets the initial evidentiary burden by demonstrating that "a preponderance of the evidence" supports the claim. *Id.* at 1372 (citation omitted). "Preponderance of the evidence . . . means the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it." *Hale v. Dep't of Transp.*, 772 F.2d 882, 885 (Fed. Cir. 1985).

### B. The AJ Properly Concluded that Mr. Jones Failed to Meet His Initial Evidentiary Burden

The AJ found that neither direct nor circumstantial evidence supported Mr. Jones's USERRA claim, such that Mr. Jones failed to demonstrate by a preponderance of the evidence that his military service was a motivating factor in HHS's decision not to hire him for the subject job vacancies. Resp't's App'x 29–38. The AJ first found that "there is no direct evidence . . . [Mr. Jones] was not hired for the positions at issue because of his past military service," *id.* at 29, a conclusion Mr. Jones does not contest on appeal.

Turning to the circumstantial record evidence, the AJ found that not one of the four *Sheehan* factors demonstrated discrimination. *See id.* at 29–38. As to the first factor, the AJ observed that forty-five years separated Mr. Jones's service and HHS's non-selection decisions, evincing a "lack of a nexus between his military service and the non-selections." *Id.* at 30. As to the second factor, the AJ found that HHS's proffered reasons for not hiring Mr. Jones were consistent with its other actions. *Id.* at 31–37. As to the third factor, the AJ found no hostility towards uniformed members by HHS, concluding that the evidence proffered by Mr. Jones was "not circumstantial evidence supporting a finding that [Mr. Jones's] military service was a factor in any of the non-selections at issue." *Id.* at 38. Finally, as to the fourth factor, the AJ found HHS did not disparately treat veterans and non-veterans, citing several examples of HHS employees either finding veteran applicants qualified where they did not find Mr. Jones qualified, or hiring other veterans. *Id.* at 30–31 & n.2.

Mr. Jones alleges that the AJ erred "by *omitting* key evidence and testimony from [its] decision." Pet'r's Br. 2. In particular, Mr. Jones identifies nine errors that the AJ allegedly committed, some of which he tethers to particular *Sheehan* factors and others he asserts more generally. *See id.* at 2–16. None of Mr. Jones's arguments are persuasive.

Starting with his general allegations, Mr. Jones alleges that the AJ took too long to decide his case—"over six months from the close of the hearing until [the AJ] rendered his decision." *Id.* at 2. However, neither the governing statute nor the relevant regulation requires the AJ to issue a decision within a particular time period. 5 U.S.C. § 7701(b)(1) ("The . . . [AJ] . . . shall make a decision after receipt of the written representations of the parties to the appeal and after opportunity for a hearing."); 5 C.F.R. § 1201.111(a) ("The judge will prepare an

initial decision after the record closes and will serve that decision on all parties to the appeal, including named parties, permissive intervenors, and intervenors of right.").

Mr. Jones also alleges that the AJ improperly credited the testimony of various witnesses. Pet'r's Br. 8–11. However, witness credibility "determinations are virtually unreviewable," *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986), and Mr. Jones has not provided us with a sufficient reason for disturbing them, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.").

Mr. Jones argues further that the AJ failed to recognize that HHS employees had "pre-select[ed]" other candidates for the vacancies at issue, such that HHS did not provide him with priority consideration for those positions as required by the Veterans Employment Opportunities Act of 1998 ("VEOA"), Pub. L. No. 105-339, 112 Stat. 3182 (codified as amended in scattered sections of 2, 3, 5, 10, 28, 31, 38, and 49 U.S.C. (2006)).[5] Pet'r's Br. 6. However, the decision under review addressed only Mr. Jones's USERRA claims, not those alleged under the VEOA. Resp't's App'x 29–38. The type of VEOA claim alleged by Mr. Jones does not fall "within the reach of USERRA" because he does not allege that "the denial of

---

[5] "Congress passed the VEOA to ensure that veterans receive due consideration when they apply for vacant positions available through the merit promotion process." *Vassallo v. Dep't of Def.*, 797 F.3d 1327, 1329 (Fed. Cir. 2015) (citation omitted).

[the] veterans' preference" reflects "evidence of anti-veteran animus." *Burroughs v. Dep't of the Army*, 254 F. App'x 814, 817 (Fed. Cir. 2007) (unpublished); *see* Pet'r's Br. 6–7.

As for his last general argument, Mr. Jones contends that the AJ erred by not removing agency counsel during the hearing below. Pet'r's Br. 14–16. According to Mr. Jones, agency counsel "threaten[ed] [him] with economic, and by extension[,] physical injury" throughout the hearing. *Id.* at 15. Even if Mr. Jones's claim had merit, it would not impact our decision as to whether HHS violated USERRA when it did not hire Mr. Jones because the non-selection occurred well before the hearing.

Turning to the *Sheehan* factors, Mr. Jones alleges that the AJ erred in applying the first factor. *Id.* at 11. In particular, Mr. Jones avers that the AJ "totally *omits* all the evidence and testimony that demonstrated . . . prejudice against veterans from [the Vietnam] [W]ar is extant today." *Id.* To the contrary, the AJ "fully credit[ed]" this evidence, Resp't's App'x 29, but found that other record evidence weighed against finding a nexus between Mr. Jones's service and HHS's decision not to hire him, *id.* at 30–31. Under the substantial evidence standard of review, we "do[] not reweigh evidence on appeal." *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011).

Mr. Jones next contends that, as to the second *Sheehan* factor, the AJ overlooked evidence in support of his claim. For example, Mr. Jones alleges that statistical evidence demonstrates that HHS hires few veterans. Pet'r's Br. 4. However, the AJ found that other evidence outweighed those statistics. Resp't's App'x 36. We may not reweigh that evidence. *See NTP*, 654 F.3d at 1292. Mr. Jones also alleges that the AJ improperly disregarded the fact that "he has been found 'Best Qualified' for at least 175 positions." Pet'r's Br. 12. The AJ found Mr.

Jones's assertion to be "of little evidentiary value" because it is based on Mr. Jones's "self-evaluation" and, in any event, HHS identified other evidence in support of its decision to not select Mr. Jones when he was found to be qualified. Resp't's App'x 36. We do not disturb the weight that the AJ afforded to the competing record evidence. *See NTP*, 654 F.3d at 1292.

Finally, as to the third *Sheehan* factor, Mr. Jones avers that an email sent by an HHS employee reveals a discriminatory animus towards veterans and that testimony from other HHS employees corroborates his claim. Pet'r's Br. 5–6. The AJ, however, found that Mr. Jones failed to link this email and the related testimony to the hiring decisions in dispute. Resp't's App'x 37. Although Mr. Jones cites the same evidence and raises the same argument that the AJ rejected, he has not demonstrated that the AJ erred in reaching that conclusion, nor does he identify other record evidence to support his claim. Therefore, we reject it. *See Poett v. Merit Sys. Prot. Bd.*, 360 F.3d 1377, 1381 (Fed. Cir. 2004) ("[U]nsubstantiated" assertions do not equate to evidence.).

## CONCLUSION

We have considered Mr. Jones's remaining arguments and find them unpersuasive. Accordingly, the Final Decision of the Merit Systems Protection Board is

## **AFFIRMED**

### COSTS

Each party shall bear its own costs.