NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CHASE M. LENTZ,**
*Petitioner*

**v.**

**DEPARTMENT OF THE INTERIOR,**
*Respondent*

---

2022-2009

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-15-0688-W-1.

---

Decided: November 4, 2022

---

CHASE M. LENTZ, Fresno, CA, pro se.

JOSHUA W. MOORE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD T. BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges.*

PER CURIAM.

Chase M. Lentz was employed as a botanist by the Bureau of Land Management (BLM), which is a component of the Department of the Interior. After he resigned his position, he filed an individual-right-of-action appeal with the Merit Systems Protection Board under the Whistleblower Enhanced Protection Act (WEPA), 5 U.S.C. §§ 1214(a), 2302(b)(8), complaining, as relevant here, that Interior had retaliated against him for making disclosures protected by WEPA. Specifically, he alleged that he was issued a letter of reprimand and ultimately suspended in retaliation for certain assertions (disclosures) he made about one of his supervisors, namely, that she had (1) stolen a piece of paper from him, (2) lied to Mr. Lentz's other supervisors by denying that she had authorized him to take a certain action he took, and (3) lied by denying that she knew he was hiring a new intern.

The Board rejected Mr. Lentz's request for relief, concluding that he had not proved that he had made any "protected" disclosures, as no reasonable person would view the actions he disclosed to be abuses of discretion or illegal. *Lentz v. Department of Interior*, No. SF-1221-15-0688-W-1, 2022 WL 2388642 (M.S.P.B. June 30, 2022) (*Board Op.*). Mr. Lentz appeals, arguing that the Board improperly split this appeal from other appeals he had pending before the Board and, in any event, reached an unreasonable conclusion. Because there was no improper bifurcation that prevented a full and fair adjudication of the issues Mr. Lentz raised, and because he has not established a basis for disturbing the Board's factual findings under the applicable standard of review, we affirm.

I

A

Mr. Lentz worked as a botanist at BLM's Redding, California, Field Office for more than a decade. *Lentz v. Department of Interior*, No. SF-1221-15-0688-W-1, 2016 WL 2893576 (M.S.P.B. May 13, 2016) (Initial Decision, by

Administrative Judge) (*AJ Op.*), Supplemental Appendix (SAppx.) 2.  On May 15, 2014, one of Mr. Lentz's supervisors, J.M., issued him a reprimand letter.  *Id.*, SAppx. 2.[1] The letter charged him with "failing to follow proper procedures," "acting outside the scope of his authority," and being "dishonest," based on specifications that he had authorized a contractor to graze goats on BLM land without consulting his supervisors, insisted that he had consulted with R.C.W., one of his supervisors, about that action and received approval for it from her, and accused her of lying when she denied his assertions.  *Id.*, SAppx. 2–3; *see id.*, SAppx. 19–20.  On November 13, 2014, a different supervisor, S.A., issued Mr. Lentz a notice proposing to suspend him for fourteen days for "conduct unbecoming" and "acting outside the scope of his authority," specifying, in relevant part, that Mr. Lentz had hired an intern without supervisory approval and again accused a supervisor of lying.  *Id.*, SAppx. 3.  On February 10, 2015, J.M. partly sustained both charges and suspended Mr. Lentz for fourteen days, starting February 15.  *Id.*, SAppx. 4.  But on February 11, Mr. Lentz informed BLM that he was resigning effective February 13, because of "ongoing harassment, discrimination and reprisal" that had resulted in "a hostile work environment."  *Id.*

Mr. Lentz then sought relief from the Office of Special Counsel, filing a complaint under 5 U.S.C. § 1214(a)(1)(A) on December 1, 2014.  *Id.*  He alleged that he had been retaliated against for disclosing that his supervisor had made material misrepresentations and omissions.  *Id.*, SAppx. 5. The Office notified Mr. Lentz in May 2015 "that it had terminated its inquiry into his allegations."  *Id.*, SAppx. 4.  On July 12, 2015, he filed the present individual-right-of-action appeal with the Board under 5 U.S.C. §§ 1214(a)(3)(A)

---

[1]    We follow the Board's use of initials in referring to certain people in this case.

and 1221(a).  *Id.*, SAppx. 1, 5.  He continued to press his allegations that BLM had retaliated against him for protected whistleblowing activity by disciplining and then constructively discharging him.  *Id.*

B

The Board administrative judge to whom the present appeal was assigned issued an initial decision on May 13, 2016.  Appx. 13–50; *see AJ Op.*, SAppx. 1–38.  The AJ's decision addressed, in relevant part, whether Mr. Lentz proved that he had made any "protected" disclosures by a preponderance of the evidence.  *AJ Op.*, SAppx. 16–31.  The AJ concluded that he had not and, on that basis, denied him relief.  *Id.*, SAppx. 17–19, 26, 29–31.

The AJ first rejected Mr. Lentz's claim based on the disclosure that his supervisor R.C.W. confiscated a sheet of paper containing a quotation from *The Great Gatsby* that he had taped to the back of his chair in the office.  *Id*, SAppx. 16–19.  The AJ found that no reasonable person would believe that the "quotation amounted to speech on a matter of public concern," such that Mr. Lentz could not have reasonably believed that its removal "violated his First Amendment right to free speech."  *Id.*, SAppx. 17.  As to any reasonable belief in a due process violation, the AJ rejected the claim, determining that Mr. Lentz did not prove that he "reasonably believed that he had a protected property interest in the piece of paper containing the quotation taped to the back of his chair," *id.*, SAppx. 18, and "[t]hus, . . . no reasonable person, aware of the essential facts known to, or readily ascertainable by [Mr. Lentz], could believe he was disclosing a violation by his supervisor of his due process rights, or of any other law, rule or regulation," *id.*  Mr. Lentz also failed, the AJ reasoned, to show that he had a right to display the quotation or that R.C.W. had achieved some personal gain or advantage through the removal, so there was no support for a reasonable belief

"that his supervisor's actions constituted an abuse of authority." *Id.*

The AJ next addressed Mr. Lentz's second relied-on disclosure—his statement that R.C.W. had authorized him to sign a goat-grazing permit, but then lied about doing so afterwards. *Id.*, SAppx. 19–26. The AJ found that Mr. Lentz did not prove that he reasonably believed that R.C.W. had orally authorized him to sign the permit. *Id.*, SAppx. 24–26. Mr. Lentz had previously gone through the process necessary for getting National Environmental Policy Act (NEPA) documentation approved and signed by the requisite authorities; as a result, he knew that the approval process required multiple signatures, including from J.M. and R.C.W., and that he could not approve the goat-grazing project without completed and signed documentation. *Id.*, SAppx. 24–25. Yet Mr. Lentz signed off on the project without ever completing the paperwork or getting his supervisors' signatures. *Id.* It was "inherently improbable that" he "would have requested verbal authorization from his supervisor for the . . . project, when he . . . knew he had not completed or obtained the necessary signatures on the required NEPA documentation," and it was "equally improbable that R.C.W. would have ever verbally authorized such a project knowing that the NEPA documentation had not yet been completed." *Id.*, SAppx. 25 & n.14. Nor did the AJ find credible Mr. Lentz's "apparent claim that another [environmental assessment] prepared for a cattle grazing project at a different site and time period could be used for the goat grazing project" to eliminate the need for new documentation and approval for the new project. *Id.*, SAppx. 26 n.15.

Mr. Lentz's claim of oral authorization was also "contradicted by the written record." *Id.*, SAppx. 25. His acting supervisor informed him by email that the documentation needed further revisions; and after R.C.W. emailed Mr. Lentz to request a signed assessment for the project, Mr. Lentz acknowledged that he was still working on it. *Id.*,

SAppx. 25–26.  Mr. Lentz also supplied few "details of his alleged conversation."  *Id.*, SAppx. 26.  In sum, Mr. Lentz's "claim that he ever sought or received verbal approval" was "incredible," and Mr. Lentz "failed to set forth specific facts demonstrating that he had a reasonable belief that his supervisor lied."  *Id.*

The AJ then rejected Mr. Lentz's assertion that he reasonably believed that R.C.W. was lying when she said that she did not know about his hiring of a new intern for the Chicago Botanical Garden.  *Id.*, SAppx. 27–31.  Mr. Lentz sent emails to R.C.W. and other supervisors referring to an intern "that he would soon be mentoring," but none of the communications provided specific details, *e.g.*, whether he had obtained supervisory approval.  *Id.*, SAppx. 29.  Mr. Lentz's alleged disclosure was thus too "vague and conclusory" to be protected, as "he failed to specify what [R.C.W.] allegedly knew or what she was claiming that she did not know about the hiring," nor did he "explain how he was even aware of what R.C.W. was saying about the hiring of the interns or to whom she was making these statements."  *Id.*  As a result, the AJ found that Mr. Lentz "failed to prove by preponderant evidence that his disclosure was one that a reasonable person would believe evidenced a violation by his supervisor of any law, rule or regulation" or "constituted an arbitrary or capricious exercise of power that adversely affect[ed]" his rights to her advantage.  *Id.*, SAppx. 30–31.

C

Mr. Lentz then filed a petition for review to the full Board, which, on June 30, 2022, denied the petition and affirmed the AJ's initial decision in relevant part.  *Board Op.* at *1, 8.  As for the first disclosure, the confiscation of the *Gatsby*-quote sheet of paper, the Board described Mr. Lentz as arguing to the full Board only "that the administrative judge's decision . . . failed to address the taking of his property and his Fifth Amendment right to due

process." *Id.* at *4. But the Board concluded that "the administrative judge addressed [Mr. Lentz's] due process argument and correctly found that [he had] failed to prove by preponderant evidence that he reasonably believed that he had a protected property interest in the piece of paper taped to the back of his chair." *Id.* "Similarly, while [Mr. Lentz] does not specifically argue that the [AJ] failed to address his abuse of authority argument concerning this disclosure," the Board added, the AJ had rejected that argument, and the Board found "no basis upon which to disturb" that rejection. *Id.*

As for the remaining disclosures—that R.C.W. deliberately and falsely denied that she had authorized Mr. Lentz to sign off on a goat-grazing permit and that she knew of Mr. Lentz's hiring of a new intern—the Board "reach[ed] the same ultimate finding as did the administrative judge." *Id.* at *5. The Board found that Mr. Lentz "(1) previously had followed the process to obtain the necessary approval for the goat grazing program; (2) did not obtain the required supervisors' signatures for the authorization at issue here; and (3) was not credible in claiming that he requested and received prior verbal authorization," and he "was contradicted by the written record" too. *Id.* Additionally, "he failed to provide the details of the conversation in which he allegedly received verbal authorization," rendering the "disclosure both vague and conclusory" and thus not protected. *Id.* As a result, Mr. Lentz failed to prove that a reasonable person would have believed his disclosures evidenced an abuse of authority or violation of law. *Id.*

The Board's decision became final on June 30, 2022, *id.* at *1; SAppx. 39, and Mr. Lentz filed a petition for review on July 11, 2022, ECF No. 1, within the sixty days permitted by 5 U.S.C. § 7703(b)(1)(A). We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."    5 U.S.C. § 7703(c).    Under the substantial-evidence standard, the Board's findings of fact need only be "supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gallagher v. Department of Treasury*, 274 F.3d 1331, 1336 (Fed. Cir. 2001) (citation omitted).    "As an appellate court," we broadly accept the Board's "credibility determinations" where they are not "inherently improbable or discredited by undisputed fact." *Pope v. United States Postal Service*, 114 F.3d 1144, 1149 (Fed. Cir. 1997) (citation omitted); *see Kahn v. Department of Justice*, 618 F.3d 1306, 1313 (Fed. Cir. 2010).[2]

To establish the Board's jurisdiction over a WEPA claim, a plaintiff must "exhaust[] his administrative remedies before the [Office] and make[] 'non-frivolous allegations' that (1) he engaged in whistleblowing activity by

---

[2]    Because the Board denied Mr. Lentz's petition for review and affirmed the AJ's initial decision in all parts relevant to the present appeal, *see Board Op.* at *1, we treat the AJ's decision—including the AJ's undisturbed factual findings—as the Board's decision, *see Snyder v. Office of Personnel Management*, 463 F.3d 1338, 1340 (Fed. Cir. 2006) ("The administrative judge's initial decision became the final decision of the Board after the Board denied the petition for review."); *O'Neill v. Department of Housing & Urban Development*, 220 F.3d 1354, 1359 (Fed. Cir. 2000) (same), and we hereafter refer to the relevant portions of the AJ's decision as the Board's decision, *cf. Mouton-Miller v. Merit Systems Protection Board*, 985 F.3d 864, 866 n.1 (Fed. Cir. 2021).

making a protected disclosure . . . and (2) the disclosure was a contributing factor in the agency's decision." *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001) (citations omitted). After establishing jurisdiction, the plaintiff "must prove by a preponderance of the evidence that he . . . made a protected disclosure under 5 U.S.C. § 2302(b)(8) that was a contributing factor to the" agency's action. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1364 (Fed. Cir. 2012). Under § 2302(b)(8), a protected disclosure is one that the plaintiff "reasonably believes evidences . . . any violation of any law, rule, or regulation, or . . . an abuse of authority." A belief's reasonableness is based on whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the [plaintiff] [could] reasonably conclude that the actions of the government evidence" a violation or abuse of authority. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

We cannot "reweigh evidence on appeal." *Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) (citation omitted). The substantial-evidence standard requires only that the evidence make a Board finding reasonable, even if a contrary finding would also be reasonable. *See American Textile Manufacturers Institute, Inc. v. Donovan*, 452 U.S. 490, 523 (1981); *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966); *Carroll v. Department of Health & Human Services*, 703 F.2d 1388, 1390 (Fed. Cir. 1983).

A

We first address Mr. Lentz's "bifurcation" argument—that the Board improperly decided this appeal separately from other appeals he had before the Board—in particular, a set of appeals that were back before the Board (in consolidated form) after we remanded them in *Lentz v. Merit Systems Protection Board*, 876 F.3d 1380 (Fed. Cir. 2017), along with two other appeals with which those remanded

appeals were consolidated in 2022, *see* Appx. 2. But the government asserts that Mr. Lentz never presented any arguments regarding consolidation or bifurcation to the Board, *see* Resp. Br. 24–25, and Mr. Lentz identifies nothing to the contrary. He has thus forfeited this argument. *See Bosley v. Merit Systems Protection Board*, 162 F.3d 665, 668 (Fed. Cir. 1998) ("A party in an MSPB proceeding must raise an issue before the administrative judge if the issue is to be preserved for review in this court."); *see also Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 n.1 (Fed. Cir. 2020) (same).

In any event, Mr. Lentz's argument lacks merit. He relies on this court's decision in 2017 reversing the Board's splitting of what he had brought as a single appeal into two related and overlapping cases, where that splitting prejudiced a full adjudication of the relevant claim. *Lentz*, 876 F.3d at 1382, 1386. Here, in contrast, Mr. Lentz brought separate appeals in the first place. And not only did he not ask the Board for consolidation of the present appeal with those remanded in 2017 (and the two additional appeals with which they were later consolidated), but he has not shown the kind of prejudice or comparable harm that would justify overriding the Board's exercise of its "broad discretion to control its own docket" and "substitut[ing] our judgment for that of the [B]oard in this regard." *Olivares v. Merit Systems Protection Board*, 17 F.3d 386, 388 (Fed. Cir. 1994).

Mr. Lentz's assertion that a lack of consolidation would prevent consideration of the totality of the evidence, *see* Petr. Opening Br. 3–5, is also unavailing. The appeals we remanded in 2017 address Mr. Lentz's claims regarding his resignation, *see Lentz*, 876 F.3d at 1386 (reversing the Board's bifurcation because both cases dealt with "involuntary resignation based on alleged coercive agency actions"); *accord* Appx. 2, 9–11 (consolidating the four appeals because all "involve the underlying allegations identified by the court that are relevant to the issue of the voluntariness

of [Mr. Lentz's] resignation"), whereas this appeal focuses on alleged whistleblower retaliation that occurred prior to his resignation. Some overlap in documentary evidence does not require Board consolidation of proceedings concerned with different asserted wrongs. Mr. Lentz identifies no reason that, even without consolidation, he could not introduce here all relevant evidence, including evidence that might also appear in his other Board appeals.

B

Mr. Lentz challenges the Board's findings that he failed to show that his disclosures were protected. These arguments fall short, as substantial evidence supports each challenged finding.

1

First, regarding Mr. Lentz's disclosure that R.C.W. had "removed a copy of a literary quotation from [his] workspace," Mr. Lentz here challenges "[t]he Board's finding that [he] did not reasonably believe that [he] had a protected property interest in the piece of paper . . . and . . . did not make a disclosure that a reasonable person would believe evidenced a violation by his supervisor of any law, rule or regulation." Petr. Opening Br. 5. Just as the Board's opinion reflects the absence of an argument from Mr. Lentz based on the First Amendment once the AJ had rejected that argument, *see Board Op.* at *3–4, in this court Mr. Lentz bases his argument about this disclosure only on the alleged reasonable belief in a due process deprivation—specifically on the alleged reasonable belief in the threshold element of a property interest in the piece of paper that R.C.W. removed from his desk chair.

But the Board reasonably determined that he had simply failed to demonstrate that it was reasonable to believe in such a property interest in the circumstances here. This determination was a finding of a critical gap in proof. The Board's elaboration was abbreviated because, as far as

we have been shown, Mr. Lentz supplied so few facts about the paper and its origin. The record before us does not establish that this piece of paper was anything but a government-supplied sheet of paper on which a famous quotation, fetched or typed using a government-owned computer, was printed on a government-owned printer (and could readily be again). The record also does not establish that the removal was more than temporary: Indeed, Mr. Lentz suggests that it may have been only for a few weeks, saying that an Employee Relations Specialist at BLM "ordered the literary quote returned to [him]." Petr. Opening Br. 6; *see Board Op.* at *4.

Mr. Lentz's effort to fill the gap identified by the Board is not persuasive. He points to two BLM managers—the just-mentioned Specialist and one other—who thought that R.C.W. should "return the quote" and "[l]et him repost it," or that R.C.W. "was wrong to" have taken it. Petr. Opening Br. 6 (citations and emphases omitted). Those views, which could easily reflect views of sound workplace policy, and subjective views at that, do not entail a legal conclusion about an objectively reasonable belief in a constitutional "property interest." *Cf. Lachance*, 174 F.3d at 1381 ("A purely subjective perspective of an employee is not sufficient even if shared by other employees."). When Mr. Lentz notes that "every state most likely has laws prohibiting the willful destruction or taking of someone else's property," and that "most kindergartners understand that taking something that belongs to someone else is wrong," Petr. Opening Br. 5, he is assuming, not establishing, a property interest.

We cannot say that the Board reversibly erred in finding Mr. Lentz not to have met his burden of showing a reasonable belief in a constitutionally protected property interest, let alone in a deprivation without due process. We therefore affirm the Board's decision as to Mr. Lentz's first disclosure.

2

Mr. Lentz next challenges the Board's "determination that [he] did not reasonabl[y] believe the portion of [his] . . . disclosure regarding [his] notifying [J.M.]" that R.C.W. made "false statements regarding her knowledge of the goat grazing matter." *Id.* at 7. To accept this challenge, we would have to reweigh the evidence on appeal, which we cannot do. *See Jones*, 834 F.3d at 1369.

Mr. Lentz cites various documents drawn up by his supervisors to establish that he subjectively believed that he had met with R.C.W. *See* Petr. Opening Br. 9. He further cites the goat-grazing contract, as well as his supervisors' records of their conversations with him, to show that he subjectively believed that the project would be encompassed by "the existing NEPA document." *Id.* at 10–11. But this evidence does not show that the Board's determinations are unreasonable on the evidence. Even if Mr. Lentz believed that he had met with R.C.W., his evidence does not establish the reasonableness of his belief that R.C.W. had orally given him authorization at that meeting; likewise, even if these documents show that Mr. Lentz *subjectively* believed that he was authorized to sign off on the contract, they do not establish the objective reasonableness of that belief. The Board gave ample reasons for finding that any belief in oral authorization in the circumstances of this project was simply unreasonable. *See AJ Op.*, SAppx. 19–26; *Board Op.* at *5.

Mr. Lentz further faults the Board for relying on "interactions of others where [he] was not a party to the conversation" and "communications that took place after" his alleged meeting with R.C.W., stating that such evidence is "not relevant for determining [his] reasonable belief." Petr. Opening Br. 12–13. But such evidence is clearly relevant to whether his beliefs about oral authorization were reasonable—and, therefore, indirectly relevant to whether to credit his assertions that he actually held such beliefs. The

Board reasonably found that it was not credible that Mr. Lentz, who had gone through the NEPA authorization process before, believed that oral authorization—without completion of documents and signature by supervisors—would have sufficed; nor was it credible that R.C.W. provided him oral authorization when she too knew the necessity of completing and signing all the paperwork. *See Board Op.* at *5; *AJ Op.*, SAppx. 24–26 & nn.14–15; *cf.* Petr. Opening Br. 14 (acknowledging that he possessed "expertise in these matters," that his position description required "[k]nowledge and understanding of . . . NEPA," and that he "was a 'core member of the Interdisciplinary Review Team . . . for NEPA compliance of all projects'" (citations and emphases omitted)).

The Board also reasonably found that the written record, even if it post-dates the alleged meeting, further undermines Mr. Lentz's assertions. *See*, *e.g.*, *AJ Op.*, SAppx. 21 (noting that when R.C.W. emailed Mr. Lentz more than a week after their purported meeting, "stating that she did not see a signed [assessment] for the goat grazing in the files and ask[ing] if he had it[,] [i]n his email response that same day, [Mr. Lentz] did not state that he had a signed [assessment] for this project[,] nor did he state that R.C.W. had authorized it either verbally or in writing" (citations omitted)); *id.*, SAppx. 25 (noting that R.C.W. never ratified or otherwise confirmed her alleged prior authorization by later "sign[ing] off on . . . [the] NEPA documentation for the goat grazing project"); *id.*, SAppx. 22 (noting that, after the purported meeting, R.C.W. (1) asked if the project "was covered by an existing authorization" (indicating that Mr. Lentz had not previously informed her that he thought it was); (2) requested that he "stop by to discuss the matter" (indicating that they had not previously done so); and (3) informed him that the paperwork was "inadequate" and "insufficient" after they met and reviewed it (indicating that she had not previously reviewed it or authorized him

to proceed with the project with the paperwork in that state)).

As a result, the Board had a sufficient basis for its determination that no reasonable person would have viewed Mr. Lentz's disclosure as identifying a violation of any law or an abuse of discretion. *See Carroll*, 703 F.2d at 1390. We therefore affirm the Board's decision as to this disclosure.

3

Finally, we reject Mr. Lentz's challenge to the Board's finding that his intern-related disclosure was too vague and conclusory to be protected. Mr. Lentz maintains that because he emailed R.C.W. to inform her that he "will soon be mentoring another contract employee," and she was involved with and aware of his efforts to fill the position, he reasonably believed that she was lying when she said that she did not know about the intern, so the Board erred in finding otherwise. Petr. Opening Br. 16–17 (emphasis omitted). Mr. Lentz further maintains that the Board erroneously focused on "how much specific detail [R.C.W.] had" and thereby "moved the goalposts," as the issue is "whether [R.C.W.] had *any* information." *Id.* at 16 (emphasis added). These arguments do not justify disturbing the Board's findings.

In the reprimand letter, J.M. noted that R.C.W. "first learned of the *specific hiring details* of the new [intern]" only days before the intern was to start, even though employees must "get approval from their supervisor and from the Field Manager before bringing on new interns." *AJ Op.*, SAppx. 27–29 (emphasis added) (citations omitted). Mr. Lentz afterwards asserted that "Ms. [R.C.W.] knew about the hiring of the [intern]," "that she lied to [J.M.] about not knowing about it" (or that "she was intentionally forgetting . . . about [his] decision to hire the [intern]"), and that R.C.W. "intentionally deceiv[ed] [J.M.]." *Id.*, SAppx.

27 (first alteration in original).  There is a material substantive gap between what R.C.W. said she did not know and what Mr. Lentz, in his accusation of lying, asserts that she knew.

Because of that gap, the Board reasonably determined that a reasonable person, knowing everything that Mr. Lentz knew or that was readily ascertainable by him, would not believe that R.C.W. had lied.  Mr. Lentz asserts only that she "knew" that he would "soon be mentoring another contract employee," and that "[he] had been trying to fill the . . . position for a few months."  Petr. Opening Br. 17 (emphasis omitted).  But the Board reasonably determined that this evidence does not establish that she knew any *specifics* about the hiring of that intern.  *See AJ Op.*, SAppx. 29–30 ("[Mr. Lentz] had emailed R.C.W. . . . but had provided no details, including when the intern would start, who he had consulted about the hiring, whether supervisory approval had been obtained or whether funding was available. . . . [Mr. Lentz] gave the name of the intern [to another supervisor]," who forwarded the email to R.C.W. later that day, "but provided no other information. . . . [Mr. Lentz] provided no information to R.C.W. directly about the hiring other than that he anticipated he would soon be mentoring a new intern." (citations omitted)).  Therefore, a reasonable observer would not believe that her statement that she did not know "specific hiring details" was untruthful.  *Id.*, SAppx. 27.

The Board also determined that Mr. Lentz provided no evidence establishing his knowledge of precisely what statements R.C.W. made and to whom, an apparent predicate to an accusation of lying.  *See id.*, SAppx. 29 ("I find no evidence that [Mr. Lentz] ever provided any supporting documentation to J.M. concerning his allegation, although she requested that he do so . . . ."); *id.* ("[H]e failed to specify what she allegedly knew or what she was claiming that she did not know about the hiring.  He also fails to explain

how he was even aware of what R.C.W. was saying about the hiring of the interns or to whom she was making these statements."). Substantial evidence supports the Board's finding that his disclosure was too "vague and conclusory" to be protected, *id.*; *Board Op.* at \*8, in addition to its finding that he failed to show "that his disclosure was one that a reasonable person would believe evidenced a violation," *AJ Op.*, SAppx. 30. As a result, we affirm the Board's decision as to the intern-related disclosure.

## III

For the foregoing reasons, we affirm the decision of the Board.

The parties shall bear their own costs.

## AFFIRMED