NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**KATHYO T. SANICOLA,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**
*Respondent*

---

2026-1232

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-24-0252-W-1.

---

Decided:  June 9, 2026

---

KATHYO TOKIE SANICOLA, Smyrna, TN, pro se.

DANIEL HOFFMAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by ALBERT S. IAROSSI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before TARANTO, BRYSON, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Kathyo Sanicola worked as a Supply Technician for the United States Department of Veterans Affairs (VA or agency) in Saginaw, Michigan. During her probationary period, Ms. Sanicola drove a government-issued vehicle. VA policy required that Ms. Sanicola not commit traffic violations while driving the vehicle, and she was aware that VA electronically monitored her use of the vehicle to ensure compliance with that policy. In 2023, VA terminated Ms. Sanicola's employment during her probationary period based on multiple speeding violations.

Ms. Sanicola contested her termination, alleging that she was terminated in retaliation for making certain protected disclosures to supervisors. After exhausting her administrative remedies for such whistleblowing complaints, she appealed to the Merit Systems Protection Board. A Board-assigned administrative judge (AJ), after concluding that Ms. Sanicola established a prima facie case of whistleblowing retaliation for two disclosures, rejected her claim on the ground that VA proved by clear and convincing evidence that it would have terminated her even in the absence of those disclosures. *Sanicola v. Department of Veterans Affairs*, No. CH-1221-24-0252-W-1, 2025 WL 3241099 (M.S.P.B. Sept. 30, 2025) (*Decision*). That decision became the final Board decision. We now affirm the decision.

I

A

Ms. Sanicola began her employment as a Supply Technician in July 2023 and became a member of the Medical Supply Distribution team. S. Appx. 35–36, 55, 216–17.[1]

---

[1]    "S. Appx." refers to the supplemental appendix submitted with the government's brief.

Her employment was subject to a two-year probationary period. S. Appx. 55. As part of her job within the Medical Supply Distribution team, Ms. Sanicola drove a VA-issued vehicle equipped with telematics technology for monitoring vehicle operations, including speed, and sending collected data to Ms. Sanicola's supervisors. *See* S. Appx. 216, 171.

In August 2023, Ms. Sanicola signed a "Statement of Understanding For Government Vehicle Usage," memorializing that she understood that her vehicle was equipped with telematics technology and verifying that she would "[o]bey" traffic laws. S. Appx. 48. She also completed driver safety trainings related to the use of government vehicles. *See* S. Appx. 51–54.

In the ensuing two months, Ms. Sanicola's vehicle reported four speeding incidents to her supervisors. *See* S. Appx. 29, 31, 46, 47. Consistent with agency policy, after her supervisors received notifications of her first and second speeding incidents, both of which occurred on the same day, the agency counseled Ms. Sanicola against speeding. *See* S. Appx. 41, 43. After Ms. Sanicola's third and fourth speeding incidents, and still during her probationary period, a supervisor recommended that Ms. Sanicola's employment be terminated based on misuse of a government vehicle. *See* S. Appx. 12–15. VA terminated her employment effective October 13, 2023. S. Appx. 12.

B

Ms. Sanicola then challenged the termination under laws providing protections for whistleblowing. She began by filing a complaint with the Office of Special Counsel (OSC) alleging that the termination was in retaliation for her making certain disclosures protected under 5 U.S.C. § 2302(b)(8). *See* S. Appx. 104. She alleged that she had reported unprofessional conduct in the workplace as well as her colleagues' disregard of certain agency policies and procedures. *See id.* OSC closed its investigation without finding whistleblower reprisal, *id.*, and Ms. Sanicola

appealed to the Board, seeking corrective action, *see Decision*, at 1.[2]

The Board-assigned AJ found that Ms. Sanicola had exhausted her administrative remedies and made nonfrivolous jurisdictional allegations that at least one protected disclosure was a contributing factor in her termination; on that basis, the AJ ordered a hearing. *See Decision*, at 5; S. Appx. 95. The hearing order obligated Ms. Sanicola to identify each alleged protected disclosure. *See* S. Appx. 95–97. After the record closed, the AJ reviewed Ms. Sanicola's eight alleged protected disclosures. *See Decision*, at 5–17. The alleged disclosures varied in substance but generally asserted potential violations of agency policies and problems stemming from interpersonal conflicts. *See Decision*, at 5–7.

In an initial decision, the AJ proceeded through the steps of a whistleblowing analysis. The AJ first concluded that Ms. Sanicola showed the existence of two protected disclosures: (1) a July 2023 written statement alleging that her colleagues used profanity in the workplace; and (2) a September 2023 disclosure of the location of a refrigerator in violation of agency storage regulations. *See Decision*, at 7–11. Moreover, because certain supervisors involved in the decision to terminate Ms. Sanicola's employment were aware of both disclosures, the AJ determined that relevant officials had knowledge of her disclosures at the time of her termination, which sufficed for an inference that those two disclosures contributed to the termination. *See id.* The AJ then found, however, that VA proved by clear and convincing evidence that it would have terminated Ms. Sanicola's employment for her "multiple speeding infractions" in violation of agency directives even in the absence of her

---

[2] We give the native page numbers on the Board's decision as it appears in the supplemental appendix.

protected disclosures. *Id.* at 23. The AJ therefore denied Ms. Sanicola corrective action. *Id.* at 24.

Ms. Sanicola did not seek full Board review, and the initial decision became the Board's final decision in November 2025. *See id.*; S. Appx. 3. We therefore refer to the initial decision as the Board's. Ms. Sanicola timely petitioned our court for review. We have jurisdiction to review the Board's final decision pursuant to 28 U.S.C. § 1295(a)(9).

## II

## A

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's legal determinations without deference and its underlying findings of fact for substantial-evidence support. *See McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

In seeking corrective action for alleged whistleblower reprisal, Ms. Sanicola had to show that she made a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the protected disclosure was a contributing factor in the agency's decision to take a personnel action, such as termination, specified in 5 U.S.C. § 2302(a)(2)(A). *See* 5 U.S.C. § 1221(e)(1); *Cahill v. Merit Systems Protection Board*, 821 F.3d 1370, 1373 (Fed. Cir. 2016). A disclosure is protected if the complainant "reasonably believes" that it evidences "(i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of

authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). A complainant can demonstrate that a protected disclosure was a contributing factor in a personnel action, under the "knowledge/timing" test, by showing the decisionmaker's knowledge of the disclosure and a given temporal relationship between the protected disclosure and the personnel action. *See Kewley v. Department of Health & Human Services*, 153 F.3d 1357, 1362 (Fed. Cir. 1998).

Where, as here, the complainant makes the showings just described, relief is nevertheless to be denied if the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action even in the absence of the protected disclosure. *See* 5 U.S.C. § 1221(e)(2); *Miller v. Department of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016). In performing this analysis, the adjudicator is to consider, but is not limited to, factors outlined in *Carr v. Social Security Administration*, which include: "[1] the strength of the agency's evidence in support of its personnel action; [2] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [3] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." 185 F.3d 1318, 1323 (Fed. Cir. 1999).

B

Ms. Sanicola's arguments on appeal fall into essentially two categories. First, she argues that the Board, in denying her relief, overlooked or incorrectly found certain facts. Second, she argues that the Board committed legal error to the extent that it relied on a particular Veterans Affairs Directive to establish her violation of the agency's speeding rules.

### 1

Ms. Sanicola suggests that the Board failed to consider several relevant facts in making its decision. *See* Sanicola Informal Br. at 2 (Ms. Sanicola selected "yes" to the question "[d]id the MSPB or arbitrator incorrectly decide or fail to take into account any facts?").[3] But her brief does not identify any fact that the Board failed to consider. *See id.* at 4–19. Her brief recites the same grievances that she presented to the Board in a substantially identical way. *See id.*; S. Appx. 100–03. The Board carefully addressed each of Ms. Sanicola's alleged protected disclosures and, in fact, found in her favor at certain steps of the whistleblowing analysis for two disclosures. *See Decision*, at 7–17.

Ms. Sanicola's arguments that the Board erred in certain factual findings fare no better. Our standard of review is a limited one, as described above. Ms. Sanicola's arguments amount to a request for us to reweigh the evidence and find in her favor, which we may not do under the substantial-evidence standard of review. *See* Sanicola Informal Br. at 2, 4–19; *Jones v. Department of Health & Human Services*, 834 F.3d 1361, 1369 (Fed. Cir. 2016). The Board could reasonably find that VA would have terminated Ms. Sanicola's employment, because of her repeated speeding, even in the absence of her protected disclosures.

### 2

Ms. Sanicola argues that the Board erred by accepting the agency's reliance on telematic speed data, rather than on her Michigan driving record, to determine if she violated agency speeding rules. *See* Sanicola Informal Br. at 2, 4–9, 17. We see no reversible error on this ground.

---

[3] We give the page numbers associated with the PDF version of Ms. Sanicola's brief. *See* ECF No. 11.

When Ms. Sanicola asserts that she was "not caught speeding based on Michigan state traffic laws," Sanicola Informal Br. at 9, she might be suggesting that VA could not lawfully find misconduct from proven or conceded speeding, because state or local officials did not catch it. She cites, and we see, no basis for such a suggestion. Here, the Board recognized that Ms. Sanicola's speeding citations at the agency were based on telematic notifications, not on her having been "caught" in a way that appeared on her state driving record. *See Decision*, at 19. And, as the Board noted, Ms. Sanicola acknowledged that her supervisors received telematics-based reports of her speeding incidents. *See id.* at 20 (citing S. Appx. 105 (Ms. Sanicola acknowledging that her supervisors received notifications regarding her excessive speed)).

Ms. Sanicola separately suggests that any reliance by the Board on the agency's data was legal error because the agency improperly enforced its Directive 0637 in violation of a revoked executive order cited by that Directive. *See id.* at 16–17; S. Appx. 146–71 (VA Directive 0637 referring to Executive Order 14057); Executive Order 14148, *Initial Rescissions of Harmful Executive Orders and Actions*, 90 Fed. Reg. 8237, 8239 (Jan. 20, 2025) (revoking Executive Order 14057). We agree with the Board, however, that the executive order cited by Veterans Affairs Directive 0637 "does not purport to limit agencies' use of telematics data to monitor employee driving behavior." *Decision*, at 17. Instead, that executive order, now revoked, pertains to clean energy requirements for agency vehicles. *See* S. Appx. 150–56 (Directive 0637 referencing Executive Order 14057's clean energy standards for government vehicles); Government Response Br. at 16. We therefore conclude that Ms. Sanicola has failed to show that the Board's reliance on Directive 0637 (to establish that Ms. Sanicola violated agency speeding rules) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7703(c).

Ms. Sanicola does not argue that the Board improperly applied 5 U.S.C. § 2302(b)(8) to determine which of her specified disclosures was legally protected. Nor does she contend that the Board failed to establish the agency's independent reason for terminating her employment by failing to evaluate the *Carr* factors. We thus see no reason to disturb the Board's analysis.

### III

We have considered Ms. Sanicola's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

The parties shall bear their own costs.

### AFFIRMED